JOURNAL ENTRY AND OPINION
{¶ 1} Kelly Foust ("Foust") appeals the decision of the trial court denying his petition for postconviction relief. Foust argues that the trial court erred in dismissing his petition for postconviction relief, that Ohio's postconviction procedures do not comply with the due process and equal protection requirements as set forth in the Fourteenth Amendment, and that the cumulative errors set forth in his substantive grounds for relief merit reversal or remand for a proper postconviction process. For the following reasons, we affirm.
 {¶ 2} On April 10, 2001, the Cuyahoga County Grand Jury indicted Foust with twenty-six counts of various crimes, including six counts of aggravated murder. Each aggravated murder charge included a death specification. Foust's trial began on December 12, 2001. As set forth by the Supreme Court of Ohio in State v. Foust, 105 Ohio St.3d 137,2004-Ohio-7006, the following evidence was adduced at trial:
"During the early morning of March 31, 2001, Foust broke into the home of 54-year-old Jose Coreano in Cleveland. Foust entered Jose's first-floor bedroom and killed him with a hammer blow to the head. Foust then went upstairs and repeatedly raped Jose's 17-year-old daughter, Damaris Coreano. After stealing items from the house, Foust tied Damaris to the bathtub and set the house on fire; despite her situation, Damaris managed to escape.
"A three judge panel convicted Foust of the aggravated murder of Jose, the kidnapping, rape, gross sexual imposition, and attempted murder of Damaris, and aggravated burglary, aggravated robbery, and aggravated arson. Foust was sentenced to death. To establish Foust's guilt, the state introduced Foust's pretrial confession, testimony from Damaris identifying Foust as her assailant, and the murder weapon containing Foust's DNA.
State's Case
"Foust was distraught after his relationship with his girlfriend, Janira Acevedo, came to an end. Damaris and her sister, Cheyla Coreano, were friends with Acevedo. After Foust and Acevedo broke up, Acevedo began staying at the Coreano home.
"Sometime before March 28, 2001, Foust broke into the Coreano home. On March 28, Jose, Cheyla, and Acevedo went to the police, seeking a restraining order against Foust. They did not receive a restraining order, but the police offered to send a patrol car to their residence. Jose, however, refused this offer.
"During the early morning hours of March 31, Foust had been drinking beer and wine and `getting pretty wasted.'
At some point, Foust went looking for Acevedo at a home on Sackett Avenue, where he thought she was staying. Foust peeked into a window of that home and realized that Acevedo was not there. Foust later explained, `I got really mad because [Acevedo] told me she stays there every night and doesn't go anywhere.'
"Foust then went to the Coreano home and gained entry through an open basement window. Foust found Damaris sleeping upstairs but did not locate Cheyla or Acevedo. Foust then went to Jose's bedroom on the first floor and struck Jose on the head with a claw hammer.
"Foust returned to the second-floor bedroom where Damaris was sleeping and got on top of her. When she awakened, Foust put a knife to her neck, shoved her face into the pillow, and ordered her to lie on her stomach. She tried to grab the knife, but Foust told her not to be a hero because `in reality heroes die.' Foust asked Damaris for `the money,' and she said, `what money?' Foust threatened to kill her if she did not tell him where the money was, and as a result, she said that she had a dollar and told him where he could find it.
"Foust asked Damaris if she was a virgin. Damaris told Foust that she was not, hoping that he would leave her alone. Foust removed Damaris's clothing and tied her hands behind her back. Foust then ordered her to perform oral sex. When she refused, he pointed his knife at her neck and asked her if she wanted her father to live. Damaris then performed oral sex on him.
"After this, Foust untied her hands and ordered her to lie on her back. He vaginally raped her multiple times and also touched her breasts and put his fingers on her vagina. She saw his face during these rapes. When he finished, he ordered her not to move and left the bedroom.
"Shortly thereafter, Foust returned to the bedroom and vaginally raped her again. Damaris asked why he was `doing this to a Christian,' and he replied that if she was a real Christian, she would forgive him. Foust then ordered her to get on her knees and pray out loud for him. While on her knees, Damaris prayed that God would help him realize what he was doing. Foust told Damaris to shut up, put her back on the bed, and raped her again.
"After that, Foust took Damaris into her sister's bedroom. Although Foust had placed a shirt over her head, Damaris saw Foust take several things from her sister's room. Foust then forced Damaris into the bathroom and tied her hands and feet together with shoestrings. He then tied Damaris to the bathtub leg with a chain belt, told her not to move, and left the bathroom.
"Later, Foust returned to the bathroom and accused her of moving around. He said, `You think I'm playing with you,' and cut one of her braids off. Foust also touched her vagina with his knife and threatened to slice her open if she moved.
"While Damaris was tied up in the bathroom, Foust started fires in Jose's downstairs bedroom and in the upstairs bedrooms of Cheyla and Damaris. Afterwards, he took Jose's car keys, left the house, and drove Jose's car about two blocks, parked it on the street, and walked to a friend's house.
"While tied up in the bathroom, Damaris smelled smoke, managed to move the shirt from her face, and saw that the house was on fire. She freed herself by wiggling the belt loose from the bathtub leg. She then crawled into her bedroom, maneuvered herself onto her bed, and let the fire on her mattress burn the shoelaces off her ankles and wrists. Damaris put the fire out in her room and went downstairs to look for her father but could not find him. She then left the smoke-filled house and ran to a neighbor's home for help.
"Police and firefighters arriving at the scene found the home engulfed in flames. Jose's body, burned beyond recognition, was found on his bed. Damaris told Patrolman William Hyland that "Kelly" had attacked her and started the fire. Although she was unsure of his last name, she thought it was "Foster or something like that." Hyland noticed that Damaris had shoelaces tied to her wrists."After the fire was extinguished, police and fire personnel began collecting evidence from the house. Lt. Victor Gill, an arson investigator, determined that the fire had originated in the first-floor bedroom and the two second-floor bedrooms. Investigations revealed two spent matches: one next to a box of matches on the kitchen floor and another on the carpet next to Damaris's bed. Lt. Gill concluded that "there were at least three fires and each [had been] separately and intentionally set." "In the basement, police found Foust's left thumbprint on a water pipe near the basement window. During a search of the house on April 6, 2001, police found a claw hammer underneath Damaris's bed." After identifying Foust as the primary suspect, police began searching for him. On April 7, 2001, the police arrested Foust, and around 10:30 a.m., Detectives Denise Kovach and Michael Cipo interviewed Foust at the police station. After waiving his Miranda rights, Foust confessed to breaking into the home, hitting Jose, and raping Damaris. However, Foust claimed that he "didn't intentionally want to do any harm" and said, "I really don't know what I was doing, just trying to find out where Janita [sic, Janira] was." (Emphasis in original.)" At trial, Julie Heinig, a DNA analyst, testified that a preliminary examination of the hammer revealed blood on the hammer claw. According to Heinig, "The DNA profile obtained from the blood on the hammer matched the DNA profile of Jose Coreano." The handle of the hammer was also tested and revealed a DNA mixture to which Foust could not be excluded as a contributor.
"Joseph Serowik, a scientific examiner for the Cleveland Police Department, examined a rape kit containing blood, hair, and swab samples obtained from Damaris. Examination of the vaginal swab sample revealed sperm cells and seminal fluid. Testing of rectal swabs showed the presence of seminal fluid and blood. Due to administrative problems at the lab, however, DNA testing was not conducted on this evidence.
"Dr. William Bligh-Glover, a deputy coroner for Cuyahoga County, performed an autopsy on Jose Coreano and concluded that Jose had fourth-degree burns over 100 percent of his body and had "suffered blunt force trauma to his head with soft tissue skull and brain injuries." He further testified that the hammer found in Damaris's bedroom could have caused the circular fracture on Jose's skull. Dr. Bligh-Glover concluded that Jose's death was caused by the blunt impact to the head and that the burns occurred after death. He reached this conclusion because no carbon monoxide had been found in Jose's blood, and high levels of carbon monoxide would normally be found in the blood of a person who had died from smoke inhalation. Also, he found no soot in Jose's lungs."The defense presented no evidence during the guilt phase of trial. Trialresult"The state charged Foust with one count of aggravated murder, alleging he had caused Coreano's death with prior calculation and design, five counts of aggravated murder, alleging he had caused Coreano's death while committing a felony, and 20 related felony counts. Foust waived his right to a jury trial, and a three judge panel heard his case. He pleaded not guilty to all charges." Id. at 137-140.
 {¶ 3} At the conclusion of trial, the Court found the defendant not guilty of aggravated murder in count 1, but guilty of a lesser included offense of murder. The court found the defendant guilty of aggravated murder, and of all specifications of aggravated circumstances, in counts 2, 3, 4, 5, and 6; guilty of attempted murder (but not as to the sexual motivation specification) in count 7; guilty of aggravated burglary in count 8; not guilty of aggravated burglary in count 9; guilty of aggravated robbery in count 10; guilty of kidnapping (but not guilty as to the sexual motivation specification) in count 11; guilty of rape in counts 12 through 16; guilty of gross sexual imposition in counts 20-22; and guilty of aggravated arson in counts 24-26.
 {¶ 4} On January 8, 2002, the panel conducted a hearing as to the penalty to be imposed. On January 11, 2002, the court returned a verdict that included a sentence of death as to counts 2, 3, 4, 5, and 6, and prison sentences as to the remaining counts.
 {¶ 5} Foust filed a notice of direct appeal to the Supreme Court of Ohio, which was denied on December 29, 2004.
 {¶ 6} Foust also filed a petition for postconviction relief with the trial court on May 9, 2003, and filed a supplemented petition, which raised an additional five grounds for relief, on June 4, 2003. The State of Ohio responded with its motion to dismiss on July 23, 2003. On October 21, 2003, the trial court overruled Foust's petitions for postconviction relief, and first amended petition for postconviction relief. The trial court attached findings of fact and conclusions of law with its journal entry.
 {¶ 7} Foust appeals this decision, raising the four assignments of error contained in the appendix to this opinion.
 {¶ 8} In his first and second assignments of error, Foust argues that the trial court erred by dismissing his petition for postconviction relief without first conducting an evidentiary hearing. We disagree.
 {¶ 9} In his petition for postconviction relief, Foust raised sixteen grounds for relief, which the trial court rejected. The trial court dismissed grounds one, seven, nine, three, five, six, ten, eleven, twelve, fifteen, and sixteen without an evidentiary hearing because the evidence dehors the record attached to Foust's petition failed to demonstrate that he was entitled to relief. The trial court dismissed grounds two, four, thirteen, and fourteen without an evidentiary hearing on the basis of res judicata. The trial court dismissed the eighth ground for relief based on both res judicata and failure to demonstrate entitlement to relief.
 {¶ 10} It is well settled that trial courts are not automatically required to conduct an evidentiary hearing whenever a petition for postconviction relief is filed. State v. Slagle, Cuyahoga App. No. 76834, 2000 Ohio App. LEXIS 3641; State ex rel. Jackson v. McMonagle (1993),67 Ohio St.3d 450; State v. Strutton (1988), 62 Ohio App.3d 248, paragraph one of the syllabus. The pivotal concern is whether there are substantive constitutional grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and materials, and the files and records. State v. Jackson (1980),64 Ohio St.2d 107, 110; Strutton, supra. A petitioner is entitled to postconviction relief under R.C. 2953.21 only if the court can find that there was such a denial or infringement of the petitioner's rights as to render the judgment void or voidable under the Ohio or United States Constitutions. State v. Perry (1967), 10 Ohio St.2d 175. Where a petition for postconviction relief fails to allege facts which, if proved, would entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition. Perry, supra at paragraph two of the syllabus.
 {¶ 11} In reviewing whether the trial court erred in denying a petition for postconviction relief without an evidentiary hearing, we apply an abuse of discretion standard. State v. Chafin, Franklin App. No. 98AP-865, 1999 Ohio App. LEXIS 1470. See, also, State v. Braden, Franklin App. No. 02AP-954, 2003-Ohio-2949; State v. Watson (1998),126 Ohio App.3d 316. "The term `abuse of discretion' connoted more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 12} Furthermore, a petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. State v. Perry, supra. Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21 where they have already, or could have been fully litigated by the defendant, either before his judgment of conviction or on direct appeal from that judgment. Perry, supra at paragraph seven of the syllabus; State v.McCullough (1992), 78 Ohio App.3d 587. Issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record. State v. Durr (July 28, 1994), Cuyahoga App. No. 65958. If an issue has, or should have been raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. Statev. Spisak, Cuyahoga App. No. 67229, 1995 Ohio App. LEXIS 1567.
 {¶ 13} Because an appeal from the judgment of conviction is limited to the trial court record, a petition for postconviction relief may defeat the res judicata bar if its claims are based on evidence outside the record. See State v. Cole (1982), 2 Ohio St.3d 112, 113-114, Slagle
supra. However, new evidence attached to the petition for postconviction relief must meet "some threshold standard of cogency; otherwise it would be too easy to defeat the holding of Perry by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]" State v. Lawson (1995),103 Ohio App. 3d 307, 315, quoting State v. Coleman, Hamilton App. No. C-900811, 1993 Ohio App. LEXIS 1485. Moreover, the evidence dehors
the record must not be evidence that was in existence and available for use at the time of trial or direct appeal. Coleman, Braden at paragraphs 27, and 36, and Slagle at 11, supra.
 {¶ 14} Here, the trial court properly dismissed Foust's second, fourth, eighth, thirteenth, and fourteenth claims for relief. As noted by the trial court, these claims for relief were adjudicated by the Ohio Supreme Court in Foust's direct appeal of his conviction. State v.Foust, 105 Ohio St.3d 137, 2004-Ohio-7006. Accordingly, they are barred by the doctrine of res judicata.
 {¶ 15} Foust argues that because his second, fourth, eighth, thirteenth, and fourteenth claims for relief contained evidence outside of the record, they could not have been fully litigated on direct appeal and are thus not subject to dismissal on the basis of res judicata. Though Foust is correct in the assertion that there is an exception to the bar of res judicata when a petition for postconviction relief is based on evidence outside the record, he is erroneous in his belief that it applies in his case. For the exception against the bar of res judicata to apply, the new evidence attached to the petition must meet some threshold standard of cogency, and must not be evidence which was in existence and available for use at the time of trial or direct appeal.Slagle at 11, Braden at paragraphs 27, and 36, supra. Here, the bases for Foust's second, fourth, eighth, thirteenth, and fourteenth claims for relief were all in existence either at the time of trial or direct appeal and could have been used in Foust's defense. Therefore, the trial court correctly dismissed all five claims for relief on the grounds of res judicata.
 {¶ 16} Specifically, Foust's second claim for relief argues that his attorneys provided ineffective assistance when they failed "to inquire into Judge Robert Glickman's employment as an Assistant Cuyahoga County Prosecutor in order to determine whether to move for the recusal of Judge Glickman." Foust supported this claim with two exhibits: a copy of two 1997 cases tried by Judge Glickman as an assistant county prosecutor, and a 1997 newspaper article explaining that one of the defendants in the above-mentioned cases confessed his guilt to Cleveland Homicide Detective Denise Kovach. It is clear that these documents, though outside of the record, were in fact available at the time of trial, and thus available to assist in Foust's defense.
 {¶ 17} In his fourth ground for relief, Foust argues that his attorneys provided ineffective assistance when they "failed to present evidence to support Petitioner's defense at the suppression hearing." Though Foust references three exhibits in support of this claim for relief, only two could arguably support this assertion. One of the documents is a 1997 article entitled The Social Psychology of PoliceInterrogation. Clearly this piece of evidence was available at the time of trial and could have assisted in Foust's defense. The other form of evidence was an affidavit submitted by Foust himself. The trial court found the affidavit to be self serving and not credible and barred by res judicata. The evidence contained in Foust's affidavit was readily available for use at the time of his trial and, therefore, the trial court correctly found this claim for relief barred by res judicata.
 {¶ 18} In his eighth ground for relief, Foust argues that his attorneys provided ineffective assistance when they allegedly misled him into waiving his jury rights. Foust supports this claim with an affidavit claiming that he did not knowingly, or voluntarily waive his right to a jury trial. The trial court correctly found the claim barred by res judicata because any evidence relating to this issue was in existence and available in time to support a direct appeal.
 {¶ 19} In his thirteenth ground for relief, Foust argues that "his convictions and sentence are void or voidable because his death sentence was disproportionate to similarly situated capital defendants in Cuyahoga County, Ohio." In support of this claim, Foust attached a spreadsheet summarizing the capital cases indicted in Cuyahoga County from 1998 to 2002. This evidence was available to Foust at the time of his direct appeal, and therefore, it is barred by res judicata.
 {¶ 20} In his fourteenth ground for relief, Foust argues that Ohio's death penalty statute improperly "permits the imposition of capital punishment in an arbitrary, capricious and discriminatory manner due to the uncontrolled discretion afforded elected county prosecutors in determining when to seek the death penalty." In support of his claim, Foust references the same chart in support of his thirteenth claim for relief, as well as the 2000 Census Profile of General Demographic Characteristics. Such evidence was available to Foust at the time of his direct appeal and accordingly, this claim is barred by res judicata.
 {¶ 21} The trial court also properly denied Foust's first, seventh, ninth, third, fifth, sixth, tenth, eleventh, twelfth, fifteenth, and sixteenth grounds for relief. In each instance, the trial court found that Foust failed to allege sufficient operative facts to warrant an evidentiary hearing and relief. We agree.
 {¶ 22} In his first, seventh, and ninth grounds for relief, Foust alleges that the prosecution withheld material evidence depriving him of his rights to due process, fair trial, and effective assistance of counsel. The evidence relating to Foust's first and seventh grounds for relief consisted of portions of the records of the Cleveland Police and Fire Departments. Evidence relating to Foust's ninth ground for relief consisted of statements made by Damaris Coreano after Foust's trial.
 {¶ 23} The State must provide to a defendant any evidence it has which is favorable to the defendant and is material to either his guilt or punishment. Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine the * * * outcome." State v. Waddy (1992),63 Ohio St.3d 424, quoting United States v. Bagley (1985), 473 U.S. 667,682, 105 S.Ct. 3375, 3383.
 {¶ 24} The trial court found that there was no proof to suggest that the evidence had been intentionally withheld by the prosecutors, and, that even if the evidence had been disclosed, it was not material and would not have had an impact on the outcome of the trial. The trial court found that nothing in the reports detracted from the fact that police suspected only Foust as the assailant from the date of the crime, that Damaris Coreano confidently identified Foust as her attacker, and that the State provided overwhelming corroborative evidence to support Foust's conviction. Accordingly, we cannot say that the trial court abused its discretion in finding that the evidence would not have had an impact on the outcome of trial and that therefore the evidence was immaterial.
 {¶ 25} We also find that the trial court properly dismissed Foust's claim that the alleged failure of the prosecutor "to disclose material evidence" caused his trial counsel to render ineffective assistance. In order to demonstrate ineffective assistance of counsel, a defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, State v. Bradley (1989), 42 Ohio St.3d 136. This ground for relief states that because such information had been withheld, his attorneys were unable to fully prepare for the questioning of witnesses nor able to fully conduct a pretrial investigation. Though supported by exhibits, this claim is insufficient to warrant an evidentiary hearing. As stated above, the trial court determined that the allegedly withheld evidence did nothing to detract from the fact that Foust committed these crimes and that, therefore, the evidence was not material to the outcome of the case. We cannot say that the trial court abused its discretion in making that determination.
 {¶ 26} In his ninth ground for relief, Foust argues that the State "withheld material evidence-inconsistent statements made by the alleged rape victim." Foust supports this argument by attaching transcripts from a December 18, 2002 Montel Williams Show where Damaris Coreano appeared as a guest, and an affidavit of an Ohio Public Defender who had interviewed Damaris Coreano on April 24, 2003.
 {¶ 27} Foust attempts to argue that because Damaris Coreano made inconsistent statements to Montel Williams one year after the crime, and the Ohio Public Defenders Office more than two years after the crime occurred, that she must have made conflicting statements to police and prosecutors prior to and during trial. Foust takes the additional step and argues that police and prosecutors committed a Brady violation when they failed to turn over these statements. This argument is speculative at best and does not warrant an evidentiary hearing nor relief from conviction. The trial court properly dismissed Foust's ninth ground for relief.
 {¶ 28} In Foust's third, fifth, and sixth grounds for relief, he argues various claims of ineffective assistance of counsel. As previously stated, in order to demonstrate ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011. "Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness."Jackson, supra at 111. (Emphasis in original.)
 {¶ 29} A review of the evidence attached by Foust in support of his claim of ineffective assistance of counsel reveals that Foust has failed to demonstrate that counsel breached an essential duty owed to him. With respect to Foust's arguments that his attorneys were ineffective during the mitigation phase of the trial, we note that during that phase of trial, Foust presented testimony from Gary William Foust, Sr. (Foust's father), Barbara Ann Foust (Foust's mother), and Dr. James Karpawich (mitigation specialist and defense psychologist). The testimony portrayed the abusive and dysfunctional home life of Foust, the history of abuse by Foust's father, and Foust's alcohol dependency. Therefore, the record shows that Foust's counsel presented a competent and meaningful theory of mitigation.
 {¶ 30} In support of these claims for relief, Foust submitted affidavits of family members, records from Cuyahoga County Children's Services, and the Ohio Department of Youth Services, all of which reiterate what a dismal home life Foust endured as a child. The trial court found that the decision of Foust's counsel to not place this additional evidence on the record was a tactical decision designed to avoid cumulative testimony, which had no bearing on the outcome of trial. We cannot say that the trial court abused its discretion in making these findings.
 {¶ 31} In Foust's tenth ground for relief, he argues that the method chosen by the State of Ohio for execution violates the due process protections of life and constitutes cruel and unusual punishment. The trial court rejected this argument citing State v. Braden, Franklin Cty. App. No. 02AP-954, 2003-Ohio-2949, which held:
"With regard to his eleventh ground for relief, appellant argued thatthe use of lethal injection was cruel and unusual punishment. The OhioSupreme Court has held that execution by either electrocution or lethalinjection does not run afoul of the Eighth Amendment's proscriptionagainst cruel and unusual punishment. See State v. Carter (2000),89 Ohio St.3d 593."
 {¶ 32} The trial court did not abuse its discretion in dismissing this claim for relief.
 {¶ 33} In his eleventh ground for relief, Foust argues that even if.
 {¶ 34} not one of the cited grounds is substantial enough to have made his trial fundamentally unfair, the cumulative effect of the purported errors cannot be said to be harmless. The trial court found that "the record fails to support the claim of multiple errors, whether harmless or not," and dismissed this ground for relief. We find that the trial court did not abuse its discretion in doing so. Moreover, this ground for relief is more thoroughly explored in Foust's fourth assignment of error.
 {¶ 35} In his twelfth ground for relief, Foust argues that his trial counsel rendered ineffective assistance of counsel in failing to present evidence to support their argument that the death penalty is applied in an arbitrary manner. In support of his claim, Foust presents statistics regarding capital cases in Cuyahoga County, and general demographic characteristics from the 2000 Census. The trial court found that the evidence attached was not of evidentiary quality, and, that the evidence failed to prove that the actions of Foust's attorneys fell below an objective standard of reasonable representation and that he was prejudiced by such action. We agree.
 {¶ 36} Foust does not show how counsel's failing to argue the evidence contained in the exhibits fell below an objective standard of reasonable representation and that he was prejudiced. We find that the trial court did not abuse its discretion in dismissing this ground for relief.
 {¶ 37} In his fifteenth ground for relief, Foust argues that his conviction is void or voidable because the statutory proportionality reporting system for death penalty cases is inaccurately and ineffectively processed in Cuyahoga County, Ohio. The trial court found that Foust failed to show any specific defect in the statistical reporting performed by the Clerk of Courts of Cuyahoga County, nor has he shown any actual prejudice to him.
 {¶ 38} We agree with the trial court. The evidence attached in support of this ground for relief merely alleges equal protection and due process violations through allegations of inadequate reporting. Such evidence is speculative and is insufficient to warrant either an evidentiary hearing or relief. The trial court did not abuse its discretion in dismissing this ground for relief.
 {¶ 39} In his sixteenth and final ground for relief, Foust once again argues that he received ineffective assistance of counsel when his attorneys failed to investigate and present evidence at the culpability phase of his trial. In support of this claim, Foust supplies evidence arguing that his attorneys failed to present evidence that "Weito", also known as Jose Santiago, had lied to several people about his whereabouts the night of the crime, and, that he `desperately' tried to establish an alibi for that night. Foust then argues that "[t]heir representation fell below an objective standard of reasonableness * * *. Appellant was prejudiced because information existed that was never investigated showing Weito's different attempts at an alibi for the night of the crime."
 {¶ 40} The trial court found that this evidence had no bearing on the outcome of trial and, therefore, did not prejudice Foust. We agree. Moreover, Foust did not prove his attorneys committed ineffective assistance of counsel. He merely states that counsel's representation fell below an objective standard and then claims that he suffered prejudice. This statement is not enough to require an evidentiary hearing. "Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." Jackson, supra at 111. (Emphasis in original.) Foust failed to meet this burden and, accordingly, the trial court did not abuse its discretion in dismissing this claim for relief.
 {¶ 41} Foust's first and second assignments of error are overruled.
 {¶ 42} In Foust's third assignment of error, he argues that "Ohio's post-conviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment." We disagree.
 {¶ 43} In this assigned error, Foust essentially argues that Ohio's postconviction relief statutes are constitutionally deficient because they do not allow for discovery. This same argument has been rejected by this and other Ohio appellate courts. See Braden, at paragraph 40; State v.Hessler, Franklin Co. App. 01AP-1011, 2002-Ohio-3321 at paragraph 85;State v. Jackson, Franklin Co. App. No. 01AP-808, 2002-Ohio-3330; Statev. Scudder (1998), 131 Ohio App.3d 470, 478, appeal dismissed (1999), 85 Ohio St.3d 1456; State v. Coleman, Clark App. No. 2001-CA-42, 2002-Ohio-5377, at paragraphs 111-112, discretionary appeal not allowed (2003), 98 Ohio St.3d 1478; State v. Hoffner, Lucas App. No. L-01-1281, 2002-Ohio-5201 at paragraph 36; State ex rel. Love v. Cuyahoga CountyProsecutor's Office, 87 Ohio St. 3d 158, 159, 1999-Ohio-314, certiorari denied (2000), 529 U.S. 1116, 120 S.Ct. 1977 (determining a defendant is not entitled to discovery in postconviction proceedings). Accordingly, Foust's third assignment of error is overruled.
 {¶ 44} In his fourth and final assignment of error, Foust argues that "the cumulative errors set forth in appellant's substantive grounds for relief merit reversal or remand for a proper post-conviction process." We disagree.
 {¶ 45} Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. State v. Garner, 74 Ohio St.3d 49,64, 1995-Ohio-168, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444;State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. Because we have not found any instances of error in this case, the doctrine of cumulative error is inapplicable. Accordingly, Foust's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Gallagher, J., Concur.
 Appendix A Assignments of Error:
 "I. The trial court erred by dismissing appellant's post-convictionpetition where he presented sufficient operative facts and supportingexhibits to merit an evidentiary hearing and discovery.
 II. The trial court erred by dismissing appellant's post-convictionpetition where he presented sufficient operative facts and supportingexhibits to merit an evidentiary hearing and discovery.
 III. Ohio's post-conviction procedures neither afford an adequatecorrective process nor comply with due process and equal protection underthe Fourteenth Amendment.
 IV. Considered together, the cumulative errors set forth in appellant'ssubstantive grounds for relief merit reversal or remand for a properpost-conviction process."