[Cite as *State v. Hale*, 2016-Ohio-5837.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
### No.   103654

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DELANO HALE

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-04-454857-A

**BEFORE:**   Blackmon, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   September 15, 2016

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

By: Isa Mauch
Jessica Carrico
Assistant Public Defenders
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Matthew E. Meyer
Christopher D. Schroeder
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Delano Hale ("Hale") appeals the trial court's dismissal of his petition for postconviction relief and assigns the following five errors for our review:

I.   The trial court erred by applying the doctrine of res judicata to bar Hale's first through twelfth and fifteenth through nineteenth grounds for relief.

II.   The trial court erred in dismissing Hale's postconviction petition, when he presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing.

III.   The trial court erred when it failed to rule on Hale's motion for leave to conduct discovery.

IV.   The trial court erred when it failed to rule on Hale's motion for funds to employ experts and to conduct expert testing.

V.   The trial court abused its discretion when it denied Hale relief without affording him the necessary due process to meet his burden.

{¶2}   Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

{¶3}   The underlying criminal case against Hale arises from the aggravated murder of Douglas Green ("Green").   Hale was indicted on two counts of aggravated murder, with each one carrying a felony-murder death specification, alleging murder during a robbery.   Other counts charged aggravated robbery, tampering with evidence, and having a weapon while under disability.

{¶4}   On June 7, 2005, the jury convicted Hale of all counts and specifications, and he was sentenced to death for the aggravated murder of Green.   Hale filed a direct

appeal from his conviction. His conviction was affirmed by the Ohio Supreme Court. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864.

{¶5} While his appeal was pending before the Ohio Supreme Court, Hale filed a petition in common pleas court for postconviction relief. On this same date, he filed a motion for discovery and a motion for funds in order to obtain experts. The state answered the petition. On September 24, 2015, the trial court dismissed Hale's petition and issued a 15-page findings of fact and conclusions of law.

## Petition for Postconviction Relief

{¶6} We will address Hale's first and second assigned errors together because they both concern the trial court's denial of Hale's petition for postconviction relief. Hale argues that because his attached evidence dehors the record, the trial court erred by dismissing some of the grounds listed in his petition for postconviction relief based on res judicata. Additionally, he argues that the trial court erred by not granting his petition or at least conducting an evidentiary hearing based on the evidence he attached to his petition.

**Standard of Review**

{¶7} A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment. *State v. Steffen*, 70 Ohio St.3d 399, 639 N.E.2d 67 (1994). R.C. 2953.21(A)(1)(a) allows Hale to file a petition asking the trial court to vacate or set aside the judgment of conviction or sentence. Hale, as petitioner, must state all grounds for relief on which he relies, and he waives all other grounds not so

stated.   R.C. 2953.21(A)(4).   In determining whether substantive grounds for relief exist, the trial court must consider, among other things, the petition, the supporting affidavits, and the documentary evidence filed in support of the petition.   R.C. 2953.21(C).

{¶8}   A trial court may rule on a postconviction petition without first holding a hearing.   Proper grounds for dismissing a petition for postconviction relief without holding an evidentiary hearing include: 1) the failure of the petitioner to set forth sufficient operative facts to establish substantive grounds for relief, and 2) the operation of res judicata to bar the constitutional claims raised in the petition.   *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), at paragraph two of the syllabus; *State v. Lentz*, 70 Ohio St.3d 527, 639 N.E.2d 784 (1994).   A petition for postconviction relief is not the proper vehicle to raise issues that were or could have been determined on direct appeal. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).

{¶9}   The evidence submitted in support of the petition must meet some threshold standard of cogency "otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence that  is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Lawson*, 103 Ohio App.3d 307, 659 N.E.2d 362 (12th Dist.1995). The evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial.  *State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (1st Dist.1994).

{¶10} We review the trial court's ruling on a postconviction petition for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶45.

**Mitigation Phase**

{¶11} We will first address Hale's argument that the trial court erred by dismissing his claims that counsel was ineffective during the mitigation phase of his trial.

{¶12} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶13} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*.

1) Experts

{¶14} Hale contends that counsel was ineffective for not presenting prison, substance abuse, and cultural experts during the mitigation phase of his trial. He claims that the following evidence attached to his petition prevented a dismissal based on res

judicata and required that the trial court conduct an evidentiary hearing: (1) the affidavit of Clemens Bartollas, Ph.D. stating the sexual pressure and fear that Hale experienced during his previous incarceration influenced him; (2) various articles regarding the neurological affects of substance abuse; (3) the affidavit of social worker Dorian L. Hall in which he states Hale's trial counsel should have investigated whether Hale had a neurological defect and should have retained a cultural expert.

{¶15} Because the above evidence was outside of the record, the trial court erred by concluding that res judicata barred Hale from raising these claims in his petition. However, a reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason. *State v. Lozier*, 101 Ohio St.3d 161, 166, 2004-Ohio-732, 803 N.E.2d 770, ¶ 46. We agree that the trial court was correct in dismissing these claims without conducting an evidentiary hearing. As we stated above, simply attaching exhibits as evidence that are only marginally significant or that are merely cumulative will not guarantee an evidentiary hearing. We conclude the testimony of the above experts would have been cumulative to the testimony presented by defense counsel at trial.

{¶16} A review of Dr. Bartollas's affidavit shows that it mostly consists of general statements regarding prison conditions in Ohio and around the country as related to sexual assaults. He concluded, based on a one-hour telephone conversation with Hale, that Hale suffered from post traumatic stress disorder from his time previously spent in prison. Hale told him that during that time he was pressured for sex, but was admittedly never

sexually assaulted in prison. Because most of Bartollas's information deals with sexual assault in prison, it is not directly relevant to Hale because Hale was not sexually assaulted in prison.

{¶17} A review of Dr. Fabian's testimony at trial shows he interviewed Hale for eight hours. Dr. Fabian acknowledged that prison life is violent and that during his time in prison, Hale was confronted with "stressors." The fact that Dr. Bartollas provided more general information than Dr. Fabian regarding violence in prison did not result in prejudice. Although Dr. Fabian did not discuss sexual assaults in prison, Hale was not sexually assaulted in prison. Dr. Fabian, however, stressed that the sexual abuse that Hale suffered as a child may have caused him to react violently if Green did make sexual advances toward him.

{¶18} We also conclude that the evidence submitted in support of Hale's claim that counsel was ineffective for failing to obtain a substance abuse expert was cumulative. The Ohio Supreme Court has held that a defendant in a capital case is not deprived of mitigating evidence in the form of a substance abuse expert, where the defense presented "'alternative devices that * * * fulfill[ed] the same functions as the expert assistance sought [by the defendant].'" *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 103, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph four of the syllabus. Dr. Fabian testified at length during the mitigation hearing regarding Hale's and Hale's parent's substance abuse. He testified that Hale abused alcohol and drugs since the age of 12 and that substance abuse was one of the

factors that contributed to the cycle of violence that Hale experienced. Based on Dr. Fabian's testimony, having another expert testify regarding the affect of substance abuse on Hale would have been cumulative.

{¶19} Hale also argues that a neurologist could have testified to any neurological defect caused by the substance abuse. However, without any evidence that Hale in fact suffered from a neurological disorder, such an allegation is speculative. Although social worker Hall stated that counsel should have explored "potential neurological impairment caused by his substance abuse," the social worker was not a doctor and had no interaction with Hale. Dr. Fabian, a forensic psychologist had extensive interaction with Hale and found he did not suffer from a mental illness. "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Here, the retaining of a neurological expert to test Hale, or the presentation of one at trial, when there was no evidence that Hale had a neurological defect, did not constitute ineffective assistance of counsel.

{¶20} We also conclude the presentation of a cultural expert would have been cumulative. Hale attached the affidavit of social worker Hall in which he stated that Hale's family history and culture and surrounding environment in which he was raised influenced him as an adult. He stated that an expert should have been obtained to facilitate how these factors influenced Hale in order to "humanize" Hale to the jury.

**{¶21}** Again, we conclude such an expert would have been cumulative to the testimony presented by Dr. Fabian, who testified to the unstable family environment in which Hale was raised. Dr. Fabian also described the low income neighborhood where gang violence and drugs existed and described in detail the sexual abuse that Hale suffered as a child. Dr. Fabian concluded that all of these factors caused Hale to be an aggressive, impulsive, and violent adult.

**{¶22}** Additionally, Hale's sisters testified regarding Hale's close relationships to his mother and Father Lynch, the priest who was like a surrogate father to Hale, and how the loss of those relationships affected him. Hale, himself, testified to his childhood, his close relationship to his mother and Father Lynch, his attempts to become closer to his sisters, and his difficult relationship with his father. These concepts that would "humanize" Hale to the jury, were not so difficult or complicated to understand that an expert would have been necessary to explain the influences on Hale. Moreover, as the Ohio Supreme Court stated in Hale's direct appeal, "Hale's history, character, and background have some mitigating weight. * * * But we have seldom given decisive weight to this factor." *Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 265.

2) Stephen Key

**{¶23}** Hale also contends that the trial court erred by not granting an evidentiary hearing based on the affidavit of Stephen Key that he attached to his petition. He argued that Key's testimony would have bolstered Hale's statement to police that the victim

made sexual advances on him, which provoked Hale into shooting him. Hale argued that Key's position as a correction officer would have made him a credible witness. In the affidavit, Key averred that the victim approached him several times to come to his studio to audition to sing, which was odd because Key did not sing. Key stated that every time he saw Green, Green "seemed to be hitting on me" and that he thought he was "very aggressive."

{¶24} The trial court found that res judicata prevented Hale from raising this argument; however, because Hale did not have this evidence in the original record, it was dehors the record and res judicata, therefore, did not bar him from raising the claim. However, the trial court, nonetheless, did not err by dismissing the claim. Hale's contention that the victim provoked the murder was refuted by the physical evidence, as we will discuss in more detail later. Moreover, the jury was already aware that the victim had raped another man by forcefully performing oral sex on him. Thus, the fact he "hit on Key" would not have added to his defense. Also, although Key was a corrections officer, he also admitted that he and Hale went to school together when they were children.

3) Statistical Data

{¶25} Hale also contends that the trial court erred by failing to find merit to his argument that counsel was ineffective for failing to present statistical data showing that the death penalty was applied in an arbitrary and discriminatory manner. In support of his claim, he attached evidence to his petition presenting statistics showing the racial

disparity of the imposition of the death penalty against African Americans as compared with other races in Cuyahoga County. The evidence also allegedly showed that Cuyahoga County was over-indicting death penalty cases at the time Hale was indicted.

{¶26} Hale has failed to show how such evidence, if presented, would have resulted in a different outcome. In *State v. Foust*, 8th Dist. Cuyahoga No. 83771, 2005-Ohio-5331, we addressed this same issue and found "that the evidence failed to prove that the actions of [defendant's] attorneys fell below an objective standard of reasonable representation and that he was prejudiced." *Id.* at ¶ 36. Likewise, in the instant case, Hale has failed to prove that the result would have been different if the evidence had been presented.

**Guilt Phase of Trial**

{¶27} We will now address Hale's arguments that the trial court erred by dismissing his petition for postconviction relief based on his claims that his counsel was ineffective during the guilt phase of his trial.

1) Cross-examination of Lashayla Hale.

{¶28} Hale argues that he discovered after the trial that his sister Lashayla was threatened by the prosecutor that if she did not testify that their sickly father would be called to testify instead. He claims that his defense counsel knew about this threat and failed to cross-examine Lashayla regarding the threat. He claims this would have shown that Lashayla was testifying under duress. He further states that Lashayla's testimony was prejudicial because she testified that Hale had a gun several months prior to the

murder. In support of this claim, he attached the affidavit of his trial counsel who stated that she knew about the threat and that the failure to question Lashayla about the threat was not the result of trial strategy.

{¶29} We do not see how defense counsel's failure to question Lashayla about the prosecutor's threat was prejudicial to Hale. Lashayla appeared as a defense witness; therefore, the prosecutor would have been able to cross-examine her regardless of whether or not she testified for the state. Lashayla was also under subpoena and had to testify. Thus, the trial court did not err by refusing to conduct a hearing based on this evidence.

2) Crime Scene Expert

{¶30} Hale argues that the trial court erred by not finding merit to his claim that counsel was ineffective for failing to retain a crime scene expert to refute the forensic evidence presented by the state. Attached to Hale's petition in support of this argument was the affidavit of Gary Rini, who opined that the evidence could be viewed as being consistent with Hale's story that he shot Green to stop his sexual advances. Although the trial court held that res judicata prevented this claim because the Ohio Supreme Court in Hale's direct appeal held that the failure to hire a crime scene expert was speculative, Hale at that time of the direct appeal, did not have Rini's expert opinion, which is dehors the record. Although the trial court erred by concluding res judicata prevented the claim, we agree that the evidence did not support the claim.

{¶31} Hale stated in his statement to detectives that the victim, while seated at the foot of the bed, grabbed both of his wrists and laid his head in Hale's crotch area. Hale then allegedly freed his right wrist, reached into the bag of the victim and grabbed the gun from the bag and placed it near the victim's head. The victim told him it was not loaded. Hale stated he pulled the trigger and the victim "reeled back still gripping my wrist." Hale fired the gun again while backing away toward the mirror. He was not sure whether Green was incapacitated, so he retrieved some bullets from the victim's bag and reloaded the gun. When the victim again attempted to stand, he fired "once or twice again."

{¶32} According to the state's forensic witnesses at trial, the bullet wounds showed an execution style killing with three out of the four gunshots being clear contact wounds to the right side of Green's head in the area behind the ear. Because Hale is right handed, the victim had to be standing facing forward with Hale behind him or facing forward with Hale to his right. Both of these positions indicate an execution-style killing. Green also had gunshot residue to his right hand, indicating he lifted his hand to protect himself when the shots were fired. Hale had claimed that Green was at the foot of the bed when he shot him, but a circular spot of blood was found on the head board showing the origin was no more than three to four feet from the headboard.

{¶33} The pathologist also testified that at least three of the four gunshot wounds would have immediately rendered the victim incapacitated. This conflicts with Hale's statement in which he stated that he shot the victim two times and that as the

victim got up from the bed he grabbed a handful of bullets, reloaded the gun, and shot him two more times. There is no way that the victim could have been moving towards Hale due to the incapacitating shots.

**{¶34}** Hale contends that Rini's expert report supports his statement to police that he acted in self-defense. Rini claimed that "the state did not take into account the possibility that, while seated at the edge of the bed, the decedent could have turned his head down and to his left, thereby exposing the right side of his head to a right handed shooter." While this would account for the location of the entrance wounds, the evidence showed the bullets traveled towards the front of Green's head, not straight to the other side. So Green's head would have to be turned so far to the left that he was facing away from Green. Hale stated that Green attempted to stand up and advance toward him when he fired the last two shots. Thus, he would have been facing towards Green, not away from Green. Rini also fails to address how the gunshot residue got onto Green's right hand. Thus, because Rini's expert report does not refute the state's evidence, counsel was not ineffective for failing to retain him and there was no reason for the trial court to conduct an evidentiary hearing.

3) In Camera Review

**{¶35}** Hale argues the trial court erred by not allowing counsel to participate in the in camera review of Sergeant Baird's report. Attached to Hale's petition for postconviction relief was the affidavit of Hale's trial counsel in which she stated she was not present at the in camera hearing and that she was informed by the trial court that there

were no inconsistencies in Baird's report. She was later surprised to find that there were

in fact inconsistencies in Baird's report because Baird did not state in his report that he

told Hale that Green was bisexual, but testified to this at trial.

{¶36} We agree with the trial court that res judicata bars Hale's claim. Although

the Supreme Court did not have counsel's affidavit on direct appeal, the Supreme Court

found that there was no inconsistency in Baird's report. The court concluded:

> There was no plain error here, because Hale "has failed to identify any inconsistencies that would warrant reversal." [*State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 49]. The "inconsistencies" mentioned by Hale are actually details of the interrogation to which Baird testified but did not mention in his report. However, "[t]he fact that details may be lacking in a pretrial statement does not mean that inconsistencies exist for purposes of Crim.R. 16(B)(1)(g)." *Id.*

{¶37} Because the Supreme Court concluded that there were no inconsistencies in

Baird's report, res judicata bars this claim.

4) Testimony of Key and Bartollas

{¶38} Hale makes the same arguments regarding counsel's failure to present the

testimony of Key and Dr. Bartollas at trial that he did in his mitigation arguments above.

Because we have already addressed these arguments and found no prejudice, we will not

repeat our analysis.

{¶39} Hale also argues that counsel erred by not having Dr. Bartollas testify

regarding Hale's prior sexual assaults in prison. However, as stated above, there was

no evidence that Hale was sexually assaulted in prison.

**Constitutional Issues**

**{¶40}** Hale also raised issues separate from ineffective assistance of counsel claims where he attacked the constitutionality of the death penalty.

1) Proportionately of Sentence of Death Compared to Other Cases

**{¶41}** Hale argues that the trial court erred by concluding res judicata prevented review of his claim that the imposition of death in his case was disproportionate to the sentence issued in order of murder cases with similar or worse facts in Cuyahoga County where the death penalty was not imposed. In support of this argument, he attached 18 murder cases from Cuyahoga County where the death sentence was not imposed.

**{¶42}** We agree that res judicata prevents review of this claim because the Ohio Supreme Court has already conducted a proportionality review of Hale's sentence and concluded as follows:

> The death sentence is also proportionate to death sentences we have approved in robbery-murder cases. *See, e.g., State v. Allen* (1995), 73 Ohio St.3d 626, 644, 653 N.E.2d 675; *State v. Tyler* (1990), 50 Ohio St.3d 24, 42, 553 N.E.2d 576; *State v. Scott* (1986), 26 Ohio St.3d 92, 107, 26 OBR 79, 497 N.E.2d 55 (attempted robbery).

*Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 278.

**{¶43}** Moreover, in *McLeskey v. Kemp*, 481 U.S. 279, 292-293, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), the United States Supreme Court held that mere statistics do not establish that the administration of capital punishment violates equal protection. To sustain his claim, the defendant must show that racial considerations affected the sentencing process in his case. *Id.* Hale has failed to specifically show that racial considerations affected his sentence.

2) Death Penalty Arbitrarily Imposed

**{¶44}** Hale argues that the trial court erred by finding no merit to his claim that the death penalty law permits the imposition of capital punishment in an arbitrary, capricious, and discriminatory manner due to the uncontrolled discretion afforded to elected county prosecutors. In support of his claim, he attached statistics from Cuyahoga County cases to show the alleged erratic method of charging and prosecuting cases in Cuyahoga County.

**{¶45}** We addressed this identical issue in *State v. Foust*, 8th Dist. Cuyahoga No. 83771, 2005-Ohio-5331, and held as follows:

> In his fourteenth ground for relief, Foust argues that Ohio's death penalty statute improperly "permits the imposition of capital punishment in an arbitrary, capricious, and discriminatory manner due to the uncontrolled discretion afforded elected county prosecutors in determining when to seek the death penalty." In support of his claim, Foust references the same chart in support of his thirteenth claim for relief, as well as the 2000 Census Profile of General Demographic Characteristics. Such evidence was available to Foust at the time of his direct appeal and accordingly, this claim is barred by res judicata.

*Id.* at ¶ 20.

**{¶46}** The Ohio Supreme Court has also rejected the argument that the death penalty is unconstitutional because it is applied at the discretion of prosecutors. *Jenkins*, 15 Ohio St.3d at 169-170, 473 N.E.2d 264. The court in *Jenkins* held, "'[a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.'" *Id.* at 169, quoting *Gregg v. Georgia*,

428 U.S. 153, 225, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To conclude otherwise would represent "an indictment of our entire criminal justice system which must be constitutionally rejected." *Jenkins* at 170.

3) Reporting System to Ohio Supreme Court Inadequate

**{¶47}** Hale argues the trial court erred by not finding merit to his claim that "the Ohio Capital statutory scheme uses an inadequate system of proportionality and appropriateness review" because R.C. 2929.021 only requires minimal information to be reported to the Ohio Supreme Court.

**{¶48}** The trial court properly denied this claim because Hale failed to demonstrate that the alleged inadequacies in the reporting system prejudiced the proportionality review conducted by the Supreme Court in his case.

4) Cumulative Error

**{¶49}** Finally, Hale argues all of the above cumulative errors amounted to prejudicial error that deprived him of a fair trial. A judgment of conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. By its terms, the doctrine of "cumulative error" will not provide a basis for reversal in the absence of multiple errors. *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000). Because Hale failed to support his petition with evidence demonstrating multiple constitutional deprivations, the trial court properly

denied Hale's argument regarding cumulative error. Accordingly, Hale's second assigned error is overruled.

## Failure to Rule on Discovery Motion

{¶50} Hale argues in his third assigned error that the trial court erred by failing to rule on his postconviction motion for leave to conduct discovery.

{¶51} When a trial court fails to rule on a motion, the motion is considered denied. *State v. Collins*, 5th Dist. Licking No. 03-CA-103, 2004-Ohio-3645, ¶ 28. Thus, the trial court implicitly denied appellant's motion by failing to issue a judgment prior to entering a final order.

{¶52} The long-standing rule in Ohio is that a convicted criminal defendant has no right to additional or new discovery, whether under Crim.R. 16 or any other rule, during postconviction relief proceedings. *See State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 718 N.E.2d 426 (1999). *See also State v. Bryan*, 8th Dist. Cuyahoga No. 93038, 2010-Ohio-2088, ¶ 45; *State v. Taylor*, 8th Dist. Cuyahoga No. 80271, 2002-Ohio-2742, ¶ 19 (courts are not required to provide petitioners discovery in postconviction proceedings). The trial court, therefore, did not err by denying Hale's motion for discovery. Hale's third assigned error is overruled.

## Motion for Funds for Expert

{¶53} In his fourth assigned error, Hale argues that the trial court erred by failing to rule on his motion for funds to retain experts.

**{¶54}** While an indigent defendant sentenced to death has a statutory right under R.C. 2953.21 to appointed counsel to pursue a timely filed, first postconviction petition, the statute "does not provide for appointment of experts or investigators." *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶15. Ohio courts have concluded that there is no constitutional right to the appointment of an expert or an investigator even where the statute provides for appointed counsel in a postconviction proceeding. *Id.*, citing *State v. Smith*, 9th Dist. Lorain No. CA 98CA007169, 2000 Ohio App. LEXIS 972 (Mar. 15, 2000), and *State v. Trummer*, 7th Dist. Columbiana No. 96 CO 97, 1998 Ohio App. LEXIS 6193 (Dec. 16, 1998). *See also State v. Coleman*, 2d Dist. Clark No. 2001-CA-42, 2002-Ohio-5377, ¶ 109 (noting that there is no constitutional or statutory right to funding of an expert in aid of a postconviction petition).

**{¶55}** In opposition to the foregoing conclusion, Hale cites *State v. Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932 (1998); *Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264 (1984); and *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Although *Mason, Jenkins*, and *Ake* are capital cases, they involve the appointment of experts to assist at the trial level, not for purposes of postconviction relief. Therefore, they are inapposite. Hale's fourth assigned error is overruled.

### Postconviction Fails to Provide Meaningful Review

**{¶56}** In his fifth assigned error, Hale argues that Ohio's postconviction proceedings fail to provide meaningful review because they allow for little opportunity

for factual development because postconviction discovery is not permitted and, without sufficient documentation, a defendant is not entitled to an evidentiary hearing.

{¶57} This court in *State v. Hutton*, 8th Dist. Cuyahoga No. 76348, 2004-Ohio-3731, ¶25, 26, addressed this identical issue and held:

> A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment. *See State v. Crowder* (1991), 60 Ohio St.3d 151, 573 N.E.2d 652. It bears emphasis that state postconviction review is not a constitutional right. *Id.* Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal. _ *State v. Duling* (1970), 21 Ohio St.2d 13, 254 N.E.2d 670; *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104.
>
> Notwithstanding the narrow focus of the postconviction review under R.C. 2953.21, we believe this remedy provides adequate safeguards to protect the constitutional rights of individuals convicted of a criminal offense.

{¶58} Based on the above precedent, Hale's fifth assigned error is overruled.

{¶59} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, J., CONCURS;

MARY EILEEN KILBANE, P.J., DISSENTS
(SEE ATTACHED DISSENTING OPINION)

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶60} I respectfully dissent. I would sustain Hale's second assignment of error and remand the matter to the trial court to conduct an evidentiary hearing on Hale's petition.

{¶61} While a hearing is not automatically required on every petition, the trial court is required to consider whether the petitioner has set forth sufficient operative facts in the files and record of the case to establish substantive grounds for relief. *State v. Stedman*, 8th Dist. Cuyahoga No. 83531, 2004-Ohio-3298, ¶ 24, citing *State ex rel. Jackson v. McMonagle*, 67 Ohio St.3d 450, 1993-Ohio-143, 619 N.E.2d 1017; *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus. If the petition, the files, and the records of the case demonstrate that the petitioner is entitled to relief, the court must then proceed to a prompt hearing on the issues. R.C. 2953.21(E).

{¶62} This court has stated that "there are two conditions that must be satisfied prior to the court holding a hearing: the petitioner must state substantive grounds for relief, and the issue cannot be determined through a review of the record." *State v. Broom*, 8th Dist. Cuyahoga No. 96747, 2012-Ohio-587, ¶ 14. We have "additionally recognized that trial courts are required to hold an evidentiary hearing only if the

petitioner is relying on facts outside the record." *Id.*, citing *State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).

{¶63} The petition at issue in the instant appeal was filed on March 6, 2007. In his petition, Hale set forth 18 different grounds for relief and requested an evidentiary hearing. Hale argued trial counsel was ineffective for failing to: (1) investigate and present mitigating evidence through the testimony of a prison expert; (2) cross-examine his sister about the threats she received from the prosecutor; (3) utilize a crime scene expert to confirm the reliability of his statement to the police; (4) thoroughly investigate and present mitigating evidence, specifically the use of Steven Key as a witness; (5) thoroughly investigate and present evidence in his defense; (6) present available and relevant mitigation evidence for purposes of sentencing, specifically the effects of substance abuse; (7) present evidence that the death penalty is applied in an arbitrary and discriminating manner; (8) present a prison expert at trial regarding self defense, specifically the testimony of Dr. Bartollas; (9) effectively assist him during the mitigation phase of his capital trial; (10) present mitigating evidence that he may have suffered neurological deficits because of his extensive history of alcohol abuse, chemical abuse, and black-outs; and (11) present mitigating evidence from Dorian Hall, a substance abuse expert. Hale further argued that: (12) the trial court failed to permit defense counsel to participate in the in camera inspection of the witness statements; (13) his sentence was disproportionate to similarly situated capital offenders; (14) the death penalty law permits the imposition of capital punishment in an arbitrary manner; (15) the statutory and

proportionality reporting system for death penalty cases is inaccurately and ineffectively processed in the county; (16) the death penalty as administered by lethal injection in the state; (17) Ohio's postconviction procedures are unconstitutional; and (18) the cumulative effects of the errors he presented violated his constitutional rights.

{¶64} On August 20, 2008, the state requested a 60-day extension to respond to Hale's petition. The trial court granted the state's request five days later. The state then requested another extension on November 10, 2008. In this request, the state sought an additional 30-days to respond to Hale's petition. According to the trial docket, the court did not rule on this extension request. The state's response, which was the next entry on the docket regarding Hale's petition was not filed until July 7, 2011. Inexplicably, the state's response was filed nearly three years after the trial court granted its 60-day extension and nearly four and one-half years after the filing of Hale's petition. Eight days later, Hale moved to strike the state's untimely response. On July 25, 2011, the trial court denied Hale's motion in part. The court declined to strike the state's response, but granted Hale 60 days to reply to the state's response. Hale replied to the state's response on September 23, 2011. Another four years passed, however, before the trial court issued its ruling denying Hale's petition. It is unclear from the docket as to why the court's denial and its findings of fact and conclusions of law were issued on September 24, 2015, which was eight and one-half years after Hale's initial petition filing.

{¶65} In support of his 455-page petition, Hale attached 391 pages of exhibits. The majority concedes that a portion of these exhibits is evidence outside the record.

Specifically, the majority refers to the affidavit of Dr. Bartollas, various articles regarding neurological affects of substance abuse, the affidavit of social worker Dorian Hall, and the affidavit of Stephen Key as evidence outside the record. The majority concludes, however, that a hearing was not required on Hale's petition because this evidence was marginally significant or merely cumulative.

{¶66} I disagree with this conclusion. In support of his petition, Hale presented an extensive amount of evidence — a 455-page brief with 391 pages of exhibits. This evidence was in the trial court's purview for eight and one-half years. He argued that defense counsel was ineffective for failing to present evidence of: his history of sexual abuse, the effects of prison, alcohol abuse, and Stephen Key's experience with the victim's sexual advances. Hale's petition was inexplicably pending before the trial court for eight and one-half years before the trial court issued its ruling, denying the petition on res judicata grounds.

{¶67} I would find that this evidence is outside the record and sets forth substantive grounds for relief. Moreover, given the eight and one-half years of delay between when Hale filed his petition, the state responded, and when the court issued its ruling, and the fact that Hale presented evidence outside the record, I would find that the failure to conduct a hearing under these circumstances was unreasonable and arbitrary.

{¶68} I recognize the trial court could reach the same conclusion after a hearing on remand. However, in this unique circumstance, it would be beneficial to hold a hearing at which this voluminous evidence would be presented and examined by the trial court.

**{¶69}** Accordingly, I would sustain the second assignment of error.