[Cite as *State v. Jackson*, 2017-Ohio-2651.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104132**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEREMIAH JACKSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-09-532145-A

**BEFORE:** E.T. Gallagher, J., Keough, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 4, 2017

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

BY:   Isa Mauch
       Daniel Jones
Assistant Ohio Public Defenders
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:   Mary McGrath
       Saleh Awadallah
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Jeremiah Jackson ("Jackson"), appeals from the judgment of the common pleas court dismissing his petition for postconviction relief without a hearing. He raises the following assignments of error for review:

1. The trial court erred by applying the doctrine of res judicata to bar Jackson's sixth and eighth through twelfth grounds for relief.

2. The trial court erred in failing to allow discovery and in failing to fund needed experts on intellectual disabilities and sex offender status issues.

3. Jackson's claims for postconviction relief present sufficient operative facts to merit relief or, at the minimum, an evidentiary hearing.

4. The trial court erred in dismissing Jackson's postconviction petition when he presented sufficient operative facts to merit relief, or at a minimum, an evidentiary hearing, on the ineffective assistance of counsel claims.

5. The trial court erred in dismissing Jackson's constitutional claim of disproportionate capital sentencing by race, where the facts and statistics offer full support for these assertions.

6. The trial court erred when it dismissed Jackson's constitutional claim that his waiver of jury trial was not knowing, voluntary, and intelligent.

7. The trial court displayed prejudicial bias against Jackson's trial defense counsel, thus violating his constitutional right to a fair trial conducted before an unbiased tribunal.

8. The trial court erred in dismissing Jackson's tenth and eleventh claims for relief, when he presented sufficient operative facts to merit relief or, at the minimum, an evidentiary hearing.

9.    The trial court erred in dismissing Jackson's thirteenth claim for relief, when he presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing.

10.    The trial court erred in dismissing Jackson's fourteenth claim for relief, when the cumulative effect of all other errors should have entitled him to relief.

{¶2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural History

{¶3} The underlying criminal case against Jackson arises from the aggravated murder of Tracy Pickryl and the commission of other felony offenses during a 16-day crime spree in Cuyahoga, Erie, and Lorain counties.   In December 2009, Jackson was named in a 42-count indictment, charging him with counts of aggravated murder, attempted murder, felonious assault, theft, robbery, aggravated robbery, and kidnapping.    Each of these aggravated-murder counts included death-penalty specifications.

{¶4} In March 2010, Jackson executed a jury waiver and opted for a trial before a three-judge panel.   At the conclusion of trial, the three-judge panel found Jackson guilty of the aggravated murder counts and the accompanying death-penalty specifications.   The panel also found Jackson guilty of all noncapital counts and the accompanying gun specifications.   Following a mitigation hearing, the panel sentenced Jackson to death.

{¶5} In June 2010, Jackson appealed his convictions and death sentence to the Ohio Supreme Court.   In his appeal, Jackson raised 14 propositions of law.   The principal issues for review included the trial court's decision to conduct a limited hearing regarding an issue under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d

335 (2002), the validity of the jury waiver, the jurisdiction of the Cuyahoga County Grand Jury over offenses occurring in different counties, the sufficiency of the indictment, prosecutorial misconduct during the penalty phase, various claims of ineffective assistance of counsel, and the constitutionality of Ohio's death penalty.

{¶6} In September 2014, the Ohio Supreme Court affirmed Jackson's convictions and sentence of death. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, *reconsideration denied*, *State v. Jackson*, 142 Ohio St.3d 1425, 2015-Ohio-1353, 28 N.E.3d 123. The United States Supreme Court denied certiorari.

{¶7} While his appeal was pending before the Ohio Supreme Court, Jackson filed a petition for postconviction relief, which set forth 14 grounds for relief. On this same date, Jackson filed a motion for discovery and a motion for funds to hire an expert on intellectual disabilities and a sex offender expert. In May 2011, the trial court denied Jackson's motion for discovery and motion for funds for experts. In January 2016, the trial court dismissed Jackson's postconviction petition without a hearing, stating in pertinent part:

> After careful review of the [record] and consideration of each of defendant's 14 asserted grounds for relief, the court hereby dismisses the petition for post[-]conviction relief without a hearing. No hearing is granted because the petition and its accompanying materials and the entire record of the proceedings show that defendant is not entitled to relief under any of the grounds set for relief. Defendant has failed to sustain his burden to provide the court with evidentiary documents containing sufficient operative facts to demonstrate his entitlement to relief under the petition.

{¶8} Jackson now appeals from the trial court's judgment.

## II. Law and Analysis

**{¶9}** For the purposes of judicial clarity, we review Jackson's assignments of error out of order.

### A.   Motion for Further Discovery and Expert Funds

**{¶10}** In his second assignment of error, Jackson argues the trial court erred by failing to allow further discovery and by failing to fund needed experts on intellectual disabilities and sex offender status issues.   Jackson contends that "such relevant evidence" would have assisted him in supporting his petition for postconviction relief.

**{¶11}** The long-standing rule in Ohio is that a convicted criminal defendant has no right to additional or new discovery, whether under Crim.R. 16 or any other rule, during postconviction relief proceedings.   *See State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 718 N.E.2d 426 (1999).   *See also State v. Bryan*, 8th Dist. Cuyahoga No. 93038, 2010-Ohio-2088, ¶ 45; *State v. Taylor*, 8th Dist. Cuyahoga No. 80271, 2002-Ohio-2742, ¶ 19 (courts are not required to provide petitioners discovery in postconviction proceedings).   The trial court, therefore, did not err by denying Jackson's motion for discovery.   *See State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 52.

**{¶12}** Moreover, while an indigent defendant sentenced to death has a statutory right under R.C. 2953.21 to appointed counsel to pursue a timely filed, first postconviction petition, the statute "does not provide for appointment of experts or investigators."   *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶ 15.   Ohio courts have concluded that there is no constitutional right to the appointment of an expert or an investigator even where the statute provides for appointed counsel in a

postconviction proceeding. *Id*., citing *State v. Smith*, 9th Dist. Lorain No. CA 98CA007169, 2000 Ohio App. LEXIS 972 (Mar. 15, 2000), and *State v. Trummer*, 7th Dist. Columbiana No. 96 CO 97, 1998 Ohio App. LEXIS 6193 (Dec. 16, 1998). *See also State v. Coleman*, 2d Dist. Clark No. 2001-CA-42, 2002-Ohio-5377, ¶ 109 (noting that there is no constitutional or statutory right to funding of an expert in aid of a postconviction petition). Accordingly, we are unable to conclude that the trial court erred in denying Jackson's request for funds to obtain an expert on intellectual disabilities and sex offender status issues.

{¶13} Jackson's second assignment of error is overruled.

**B. Petition for Postconviction Relief**

{¶14} We address Jackson's remaining assignments of error together because they each concern the trial court's denial of his petition for postconviction relief. Jackson argues that because he attached evidence outside the record, the trial court erred by dismissing some of the grounds listed in his petition for postconviction relief based on the doctrine of res judicata. In addition, Jackson argues that he presented sufficient operative facts to merit postconviction relief or, at a minimum, an evidentiary hearing.

{¶15} A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment. *State v. Steffen*, 70 Ohio St.3d 399, 639 N.E.2d 67 (1994). R.C. 2953.21(A)(1)(a) allows Jackson to file a petition asking the trial court to vacate or set aside the judgment of conviction or sentence. Jackson, as

petitioner, must state all grounds for relief on which he relies, and he waives all other grounds not so stated. R.C. 2953.21(A)(4). In determining whether substantive grounds for relief exist, the trial court must consider, among other things, the petition, the supporting affidavits, and the documentary evidence filed in support of the petition. R.C. 2953.21(C).

{¶16} A trial court's decision to deny a postconviction petition without a hearing is reviewed under the abuse of discretion standard. *State v. Abdussatar*, 8th Dist. Cuyahoga No. 92439, 2009-Ohio-5232, ¶ 15. The trial court does not abuse its discretion in dismissing a petition for postconviction relief without a hearing where (1) the petitioner fails to set out sufficient operative facts to establish substantive grounds for relief, or (2) the operation of res judicata prohibits the claims advanced in the petition. *Id.* A petition for postconviction relief is not the proper vehicle to raise issues that were or could have been determined on direct appeal. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial. *State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (1st Dist.1994).

{¶17} We review the trial court's ruling on a postconviction petition for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 45.

### 1. Ineffective Assistance of Counsel — Mitigation Phase

{¶18} We will now address Jackson's argument that the trial court erred in dismissing his petition for postconviction relief without a hearing where he presented sufficient operative facts to support his claims of ineffective assistance of counsel during the mitigation phase of his trial.

{¶19} The imposition of the death penalty requires that one of ten specific statutory factors is laid out in the indictment and proven beyond a reasonable doubt at trial. R.C. 2929.04(A). In this case, Jackson was found guilty of the death-penalty factors specified in R.C. 2929.04(A)(5) and (7).

{¶20} After one of the R.C. 2929.04(A) factors is found to have been proven beyond a reasonable doubt, the court or jury

> shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
>
> * * *
>
> (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;
>
> * * *
>
> (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
>
> (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

R.C. 2929.04(B).

**{¶21}** The existence of any mitigating factors does not preclude imposition of the death penalty. However, these factors shall be weighed against the aggravating factors. R.C. 2929.04(C).

### i. Mitigation Evidence

**{¶22}** At the mitigation hearing, defense counsel introduced several exhibits and the expert testimony of John Matthew Fabian, Ph.D., a clinical psychologist, who was retained by counsel. Dr. Fabian evaluated Jackson for the purpose of providing mitigation evidence at trial. In the course of his evaluation, Dr. Fabian reviewed Jackson's school records, prison records, employment history, medical records, and the forensic psychological reports completed by the court Psychiatric Clinic. Dr. Fabian also interviewed Jackson's parents and other family members.

**{¶23}** Dr. Fabian reported that Jackson has worked at a variety of jobs, but was homeless and unemployed at the time of the offenses. Jackson's family reported that Jackson is married but that the marriage is extremely dysfunctional. *Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 284.

**{¶24}** In his written report and testimony, Dr. Fabian stated that Jackson had a significant history of alcohol and drug use leading up to substance dependence. Jackson

reported that he began using alcohol and marijuana at the age of 14. Dr. Fabian testified that Jackson's "drugs of choice were alcohol, phencyclidine or what we call PCP or angel dust, cannabis, marijuana, and then he's taken opiate-type pills such as Oxycontin, used and abused cocaine and LSD." Jackson reported that he was using an ounce of PCP and a quarter-ounce to a half-ounce of marijuana every day. Jackson also reported using cocaine on a daily basis during the last few years and drinking significant amounts of alcohol. *Jackson* at ¶ 289.

{¶25} Jackson was administered the substance-abuse screening inventory ("SASSI-3") and "clearly met [the] criteria for substance dependence, both alcohol and drug dependence." Dr. Fabian testified that Jackson "reported symptoms of dependence, nausea, dizziness, hallucinations, flashbacks, [and] drinking more than intended, [and] his substances have interfered with relationships, so it's affected work and school." *Jackson* at ¶ 290.

{¶26} Dr. Fabian further testified about the link between substance abuse and murder, stating:

> there's been some research discussing * * * the likelihood of there being alcohol or drugs involved in homicide cases and the numbers are quite high. Perhaps even up to a third or 50 percent of homicide cases there is some type of substance abuse involved by the perpetrator.
>
> * * *
>
> Individuals that are under the intoxication of PCP—well, Jeremiah called himself or referred to himself as a werewolf. So they can hallucinate, they can have faulty paranoid thinking to the threshold of a delusion, a fixed false bizarre/nonbizarre belief.

*See Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 225.   Dr. Fabian opined that "there is a possibility that there was some evidence of intoxication and a substance-induced psychosis due to the PCP that he had used."

{¶27} Dr. Fabian testified that Jackson "does not suffer from any significant mental illness such as psychosis or mood disorder."   However, Dr. Fabian stated that testing indicated that Jackson has "cognitive impairments in various areas including low intelligence, deficient academic achievement abilities and some cognitive neuropsychological deficits.   I believe * * * that they are connected and correlated with one another."   Dr. Fabian supported his conclusion with evidence of Jackson's poor grades in school and intelligence-test results showing that he had a 75 IQ.

{¶28} During his testimony, Dr. Fabian discussed the possible link between Jackson's low intelligence and his drug use.   According to Dr. Fabian,

> Individuals with cognitive impairment especially residing in areas such as [Jackson]'s, low socioeconomic areas with histories of drug trafficking and drug use are more prone to be using substances such as that.

{¶29} Dr. Fabian also testified that Jackson's low-intellectual functioning is one of several factors that "would be related empirically to some degree in this case to violence."

He stated that such factors are cumulative and additive in nature:

So the fact that this individual has low intellectual functioning, poor verbal skills, substance abuse and dependence, was potentially intoxicated at the time of the offense, unemployed, experienced relationship problems, and had access to weapons and substances * * * I think those would act cumulatively rather than just in isolation.

*See Jackson* at ¶ 227-229

**{¶30}** Dr. Fabian also weighed Jackson's statement that he had been sexually abused when he was a child by two different women who attended his father's church. Dr. Fabian was unable to verify Jackson's claim of child abuse. However, Dr. Fabian explained that assuming Jackson was abused, he was at a "higher risk" for "problematic behaviors."

**{¶31}** In addition to the testimony submitted by Dr. Fabian, defense counsel further reiterated its position that Jackson's drug use, poor socioeconomic environment, homelessness, unemployment, and estrangement from his wife were significant mitigating factors, which showed that Jackson was "spiraling down" at the time of the offenses. Finally, counsel urged the court to show mercy in arriving at its decision.

**{¶32}** In its sentencing opinion, the trial court carefully weighed all mitigating factors supported by the evidence, including Jackson's drug use, "lower than average intelligence," his remorse, acceptance of responsibility, his employment history, and other "psychosocial stressors." In addition, the trial court considered the support and love Jackson's family demonstrated throughout trial and defense counsel's suggestion that Jackson was the victim of physical and sexual abuse as a minor. Ultimately, however, the trial court concluded that the foregoing mitigating factors did not weigh in favor of a sentence other than a death sentence. The court found that Jackson's conduct was "cold, calculated" and "showed foresight, planning, cunning, and studied preparation."

### ii. Arguments on Appeal

{¶33} In his first, second, third, fourth, and fifth grounds for relief, Jackson argues that he was denied effective assistance of counsel during the mitigation phase of his capital trial where counsel (1) failed to obtain a complete and sufficient mental health assessment from a competent psychologist, (2) failed to move the trial court for appointment of an expert in intellectual disability, (3) failed to move the trial court for appointment of an expert in substance abuse/dependence, (4) failed to move the trial court for appointment of an expert in sex offender treatment, and (5) failed to fully investigate his background for mitigating factors.

{¶34} In support of these grounds for relief, Jackson submitted affidavits from (1) psychologist, Jolie S. Brams, Ph.D.; (2) Jackson's brother, Joseph Jackson; (3) Jackson's mother, Esther Jackson; (4) Jackson's sister, Crystal King; and (5) Jackson's friends, Tomorraw Graham and Johnathan Robertson.

{¶35} Dr. Brams was contacted following Jackson's conviction in order to review the quality and thoroughness of the mitigation evidence presented on Jackson's behalf. In her affidavit and attached consultation report, Dr. Brams asserted that Dr. Fabian failed to present a complete and relevant assessment of Jackson. Dr. Brams averred that in January 2011, she conducted a five hour clinical/forensic evaluation of Jackson and reviewed a large number of Jackson's "historical, educational, and psychological records." Based on her evaluation, Dr. Brams opined that a number of factors, including Jackson's mood disorder, depression, paranoia, limited intellectual abilities, substance abuse, and his previous sexual conviction, negatively impacted Jackson's "functioning" at

the time the offenses were committed. Dr. Brams stated that the referenced factors "were not properly addressed during the mitigation phase" and that "the mitigation testimony included misdiagnoses of Jackson's mental health history and difficulties, did not include significant diagnostic and historical information, and minimized or misinterpreted various aspects of functioning." Dr. Brams continued,

> as a result, the mitigation testimony presented was not informative regarding the realities of Jackson's functioning, and did not lay out in a meaningful way for the court an understanding of the scope of Jackson's deficits, and how those played a direct role in his decision making at the time that the offenses were committed.

Thus, Dr. Brams concluded that "this was one of the most ill-focused, disorganized, and unmeaningful mitigation presentations that this examiner has had the opportunity to review."

{¶36} Similarly, Jackson's friends and family collectively averred that Jackson's drug habit and his obligation to register as a "sexual offender" as a result of a prior conviction had a negative impact on Jackson's mental health. They opined that these factors caused Jackson to act unusual and contributed to his deteriorating behavior in the weeks leading to his crime spree. They further expressed their disappointment with Jackson's representation during trial and defense counsel's failure to present more personal information at the mitigation hearing.

{¶37} In denying Jackson's petition for postconviction relief, the trial court stated, in pertinent part:

> The court finds that grounds for relief I, II, III, and IV are not supported by sufficient evidence to enable the court to conclude that the

performance of trial counsel was deficient. Most of the evidence used to support these four claims is in the trial record that was available during the defendant's Supreme Court appeal and to that extent, these claims at their core are barred by res judicata as well. The court acknowledges new evidence was presented by defendant on these claims and so it does not use res judicata to deny relief under these claims. New and old evidence combined was however insufficient to show entitlement to relief.

The evidence does not show Dr. Fabian's evaluation was incomplete. The evidence does not show trial counsel should have moved for a mental retardation expert. The trial court required trial counsel to justify their decision that an *Atkin*'s claim would not be made and a hearing requested. The trial court was convinced by the hearing held on this issue that trial counsel had thoroughly considered mental retardation and that experts dealing with defendant concurred that there was no basis to further investigate mental retardation in this defendant. The evidence is insufficient to convince the court that trial counsel should have sought a substance abuse or dependence expert to prepare the defense case. The evidence is wholly insufficient to convince the court that trial counsel should have sought an expert in sex offender treatment to prepare the defense case. The court has no evidence to support the repeated references of defendant's petition to his being classified or registered as a sex offender in his prior Cuyahoga felony case number, CR-398540, let alone being "improperly" classified as a sex offender "for six years" as described in the petition and its attachments.

* * *

The court finds the evidence is insufficient to support ground for relief V. The trial record contains evidence that defendant's brother Joseph was in fact interviewed by Dr. Fabian. The several affidavits submitted by defendant's family members and friends contain no new or remarkable information to support the conclusion that an avenue of meaningful mitigation was not explored or, if explored, not presented on defendant's behalf. Brother Joseph Jackson's affidavit confirms the trial record to the effect that defendant did not want his family members to testify on his behalf and that best explains why family members and friends were not called to testify at mitigation. The trial record confirms that the court invited defendant to introduce additional witnesses at mitigation and assured him that there was no time constraint for the court to entertain the testimony of any number of witnesses he might want to call. In the end, defendant decided against calling family and friends in the mitigation.

The court after an appropriate recorded colloquy with the defendant determined that this was defendant's fully-informed and personal decision as to presentation of mitigation evidence.

{¶38} On appeal, Jackson reiterates his position that defense counsel rendered ineffective assistance of counsel during the mitigation phase of the trial by failing to fully investigate the available mitigation evidence and by failing "to seek appropriate expert assistance."

{¶39} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Id.* at 688.

{¶40} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*.

{¶41} Generally, a defense counsel's decision as to what mitigating evidence to present during the penalty phase of a capital trial is a matter of trial strategy. *State v. Keith*, 79 Ohio St.3d 514, 530, 684 N.E.2d 47 (1997), *cert. denied*, 523 U.S. 1063, 118 S.Ct. 1393, 140 L.Ed.2d 652 (1998). "In many criminal cases, trial counsel's decision not to seek expert testimony 'is unquestionably tactical because such an expert might

uncover evidence that further inculpates the defendant.'" *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-5966, ¶ 22, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 95.

{¶42} Defense counsel has a duty to investigate mitigating circumstances in order to make informed tactical decisions about which information would be most helpful to a client's case. *State v. Jackson*, 10th Dist. Franklin No. 01AP-808, 2002-Ohio-3330, ¶ 84, citing *State v. Johnson*, 24 Ohio St.3d 87, 90, 494 N.E.2d 1061 (1986). However, out-of-record evidence that is merely cumulative of, or alternative to, other mitigation evidence defense counsel presented does not provide substantive grounds for a claim of ineffective assistance of counsel at mitigation. *Combs*, 100 Ohio App.3d 90, at 98, 652 N.E.2d 205. In Ohio, it is within the purview of counsel to determine whether additional expert testimony or other information regarding a defendant's background is cumulative in nature. *State v. Cunningham*, 3d Dist. Allen No. 1-04-19, 2004-Ohio-5892, ¶ 38, citing *State v. Yarbrough*, 3d Dist. Shelby No. 17-2000-10, 2001 Ohio App. LEXIS 1930 (Apr. 30, 2001), *7. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence that counsel failed to present, but also that "there is a reasonable probability that the evidence would have swayed the jury to impose [a lesser sentence]." *Keith* at 536.

{¶43} After careful review, we find the trial court did not abuse its discretion in determining that Jackson failed to present sufficient evidence to enable the court to

conclude that Jackson received ineffective assistance of counsel during the mitigation phase of trial.

**{¶44}** Initially, we note that many of the ineffective assistance of counsel claims relating to the mitigation phase of trial were previously raised and rejected in Jackson's direct appeal. Specifically, Jackson argued that (1) counsel was not prepared to present mitigating evidence, (2) counsel failed to adequately prepare Dr. Fabian so he would address in his testimony how Jackson's substance abuse, low intelligence, and child abuse affected his actions on the date of the murder, and (3) counsel was ineffective by failing to obtain a substance-abuse expert to establish the nexus between Jackson's substance abuse and the offenses. In rejecting these claims, the Ohio Supreme Court provided a detailed analysis, focusing on the extent of Dr. Fabian's expert psychological evaluation and Jackson's failure to present sufficient evidence to support his allegations of deficient performance. *See Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 211-234.

**{¶45}** We recognize that Dr. Brams's evaluation report was outside the record and, therefore, not available during Jackson's direct appeal. However, we conclude that the evidence attached to Jackson's petition does not set forth sufficient operative facts to establish substantive grounds for relief.

**{¶46}** Regarding Dr. Brams's opinion that Jackson's "team did not call in experts that would have specific knowledge of certain areas," we find that additional expert testimony or other information regarding Jackson's background would have been

cumulative of, or alternative to, the testimony presented by defense counsel during the mitigation phase of trial. The trial court's sentencing opinion reflects that the trial court carefully considered many of the factors Dr. Brams suggests should have been thoroughly considered by an expert, including Dr. Fabian's testimony concerning Jackson's:

> (1) cognitive impairments, probable cognitive disorder and functioning in the borderline range of intellectual functioning, (2) history of polysubstance dependence and likely intoxicated state at the time of the offenses with substance dependency of phencyclidine, cannabis, alcohol, cocaine, and opioids, (3) abuse at home, including, at a minimum, harsh corporal physical discipline, (4) questionable self-reported sexual abuse between the ages of six and ten by two separate women at church, (5) witnessing violence in the community, including, according to Jackson, at least three murders, (6) growing up in a low socioeconomic community with exposure to possession of weapons, drug use, drug trafficking, and community violence, and (7) notable psychosocial stressors around the time of the offenses.

*Jackson* at ¶ 291.

{¶47} We agree that Dr. Fabian's testimony did not include a discussion of Jackson's obligation to register as a sex offender or the psychological impact that requirement may have had on Jackson at the time of the offenses. However, while a "sex offense treatment" expert may have established alternative or additional mitigating theories, we are unable to conclude that there is a reasonable probability that such expert testimony would have swayed the three-judge panel to impose a life sentence.

{¶48} Similarly, we find nothing in the record to suggest counsel "failed to supervise the work of [Dr. Fabian] to ensure that a complete and valid evaluation for intellectual disability was accomplished." As stated, Dr. Fabian testified at length concerning Jackson's various cognitive impairments and their links to Jackson's acts of

violence. Although Jackson contends that Dr. Fabian failed to conduct a thorough intellectual disability (i.e., mental retardation) assessment, the testimony presented at both the pretrial *Atkins* evaluation, and the mitigation hearing, establishes that Dr. Fabian consistently opined that the information he gathered did not support a conclusion that Jackson was intellectually disabled. The trial court agreed, stating that it "was convinced by the hearing held on this issue that trial counsel thoroughly considered mental retardation and that experts dealing with defendant concurred that there was no basis to further investigate mental retardation." Under these circumstances, we cannot say counsel rendered ineffective assistance by failing to request an expert on intellectual disabilities. As the Ohio Supreme Court noted in *Jackson*:

> Jackson has not claimed in these proceedings that he is, in fact, mentally retarded. The trial court did not conduct an *Atkins* hearing and never made a ruling that Jackson is not mentally retarded. Rather, it held a hearing so that the record would reflect that trial counsel had considered and diligently investigated the *Atkins* issue and justifiably decided not to pursue a claim that Jackson is mentally retarded. And to the extent that Jackson argues that trial counsel provided ineffective assistance by failing to adequately investigate his adaptive functioning, there is no showing that Jackson actually has deficits in intellectual or adaptive functioning that would prove mental retardation or a developmental disability, and therefore he cannot demonstrate prejudice on this record.

*Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 309. Dr. Brams's report does not present competent evidence outside the record to persuade this court to dispute the Ohio Supreme Court's conclusion on this issue.

{¶49} Regarding Jackson's claim that counsel was ineffective for failing to obtain a substance abuse expert, the Ohio Supreme Court has held that a defendant in a capital

case is not deprived of mitigating evidence in the form of a substance abuse expert, where the defense presented "'alternative devices that * * * fulfill[ed] the same functions as the expert assistance sought [by the defendant].'" *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 103, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph four of the syllabus. In this case, Dr. Fabian testified at length during the mitigation hearing regarding Jackson's long history of alcohol and drug abuse and "the possible links between Jackson's substance abuse and the offenses" committed in this case. Based on Dr. Fabian's testimony, having another expert testify regarding the effect of substance abuse on Jackson would have been cumulative.

{¶50} In addition, we find nothing in the record or the evidence attached to Jackson's petition to suggest Dr. Fabian's evaluation was incomplete or that defense counsel failed to fully investigate available mitigation evidence. As referenced in *Jackson*, defense counsel and Dr. Fabian "interviewed Jackson on numerous occasions," reviewed all relevant records, interviewed members of Jackson's family, and meticulously considered the nexus between the relevant mitigating factors and the offenses committed. *Jackson* at ¶ 216. Although Dr. Brams believes a better job could have been done investigating and presenting Jackson's psychological background, she "has the benefit of perfect hindsight, the distorting effect of which must be avoided." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987), *cert. denied*, 484 U.S. 1079, 98 L.Ed.2d 1023, 108 S.Ct. 1061 (1988). "[D]efendants are not entitled to perfect mitigation hearings." *State v. Landrum*, 4th Dist. Ross No. 98 CA 2401, 1999 Ohio App. LEXIS 71, * 41

(Jan.11, 1999). "When, as here, counsel has presented a meaningful concept of mitigation, the existence of alternate or additional mitigation theories does not establish ineffective assistance." *Combs*, 100 Ohio App.3d at 105, 652 N.E.2d 205 (1st Dist.1994).

{¶51} For these reasons, we find the trial court did not err in finding no merit to Jackson's first, second, third, fourth, and fifth grounds for relief.

## 2. Application of Res Judicata

{¶52} We now address Jackson's contention that the trial court erred in finding that his sixth, eighth, ninth, tenth, eleventh, and twelfth grounds for relief were barred by the doctrine of res judicata.

{¶53} Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Patrick*, 8th Dist. Cuyahoga No. 99418, 2013-Ohio-5020, ¶ 7, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). In order to overcome the res judicata bar, the petitioner must show, through the use of extrinsic evidence, that he or she could not have appealed the original constitutional claim based on the information in the original trial record. *Combs*, 100 Ohio App.3d, at 97-98, 652 N.E.2d 205. Said another way, issues properly raised in a petition for postconviction relief are only those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record. *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975). Thus, a

trial court may dismiss a petition on the basis of res judicata if an issue was or should have been raised on direct appeal. *State v. Dowell*, 8th Dist. Cuyahoga No. 86232, 2006-Ohio-110, ¶ 10, citing *Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104.

**{¶54}** Extrinsic evidence attached to the petition does not automatically defeat the res judicata bar. Rather, evidence outside the record must meet "'some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]'" *State v. Lawson*, 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (12th Dist.1995), quoting *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 Ohio App. LEXIS 1485, * 21 (Mar. 17, 1993). Moreover, the evidence dehors the record must not be evidence that was in existence and available for use at the time of trial and that could and should have been submitted at trial if the defendant wished to use it. *Dowell* ¶ 10.

**{¶55}** In this case, grounds six, eight, nine, ten, eleven, and twelve of Jackson's petition argued that Jackson's convictions and sentence are void or voidable because (6) he was denied effective assistance of counsel in the mitigation phase of his capital trial when counsel failed to raise the negative effect of being improperly labeled a "sex offender" in an unrelated case on Jackson's psychological state, (8) the death penalty "is disproportionally meted out to those defendant's who are racial minorities"; (9) his jury waiver was not knowingly, voluntarily, or intelligently made; (10) he was denied the effective assistance of counsel and due process during the trial phase of his capital trial

when "the trial court denied counsel the opportunity to effectively question Detective Ezzo"; (11) he was denied the effective assistance of counsel and due process during the trial phase of his capital trial when "trial counsel failed to present testimony of Reverend Darnell Know to substantiate the claim that law enforcement promised [Jackson] that he would not be subject to the death penalty if he cooperated"; and (12) he was denied the effective assistance of counsel and due process during the trial phase of his capital trial when "trial counsel failed to support the motion to suppress [Jackson's] statement to Detective Diaz after learning that [Jackson's] constitutional rights were violated."

{¶56} As stated, the trial court found that Jackson's sixth, eighth, ninth, tenth, eleventh, and twelfth grounds for relief were barred by the doctrine of res judicata. In support of its judgment, the trial court stated as follows:

> The court finds that grounds for relief VI, VIII, IX, X, XI, [AND] XII are claims barred by the doctrine of res judicata. These grounds for relief involve issues that have already been fully litigated by defendant's appeal to the Ohio Supreme Court and to the extent one could find they were not fully litigated there, they could have been fully litigated in that appeal. All of these claims are primarily supported by the trial record and not by new evidence which was unavailable to defendant at the time of trial. To the extent these grounds for relief make reference to newly discovered evidence introduced with the petition, the court finds the new evidence only marginally significant to, and supportive of, the claims made.

{¶57} We now address the merits of these grounds for relief.

### i. Additional Ineffective Assistance of Counsel Claims

{¶58} Jackson's sixth, tenth, eleventh, and twelfth grounds for relief set forth further allegations of ineffective assistance of counsel.

{¶59} "[I]neffective assistance of counsel ordinarily should be raised on direct appeal." *State v. Jones*, 8th Dist. Cuyahoga No. 83601, 2004-Ohio-3868, ¶ 6. However, "when allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for postconviction relief rather than direct appeal." *State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916, ¶ 8. Thus, to succeed on a claim of ineffective assistance of counsel in a postconviction relief petition, a defendant must present "evidence outside the record that was not in existence and was not available to the [defendant] in time to support a direct appeal. The evidence submitted outside the record must be competent, relevant, and material to the issue at hand." (Citation omitted.) *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-5966, ¶ 11.

{¶60} In his sixth ground for relief, Jackson argues defense counsel rendered ineffective assistance of counsel during the mitigation phase of trial by objecting to the prosecutor's attempt to cross-examine Dr. Fabian about Jackson's prior abduction conviction. Jackson contends that "rather than objecting to any mention of [Jackson]'s abduction case that resulted in his improper classification as a sex offender, defense counsel should have presented this information to the panel as an explanation for [Jackson]'s desperation for money and his psychological state."

{¶61} In our view, whether counsel rendered ineffective assistance by objecting to the prosecution's attempt to introduce evidence of Jackson's prior abduction conviction could fairly have been determined on direct appeal based on the information contained in

the trial record. In this instance, Jackson's challenge to defense counsel's trial strategy during Dr. Fabian's cross-examination does not hinge on facts outside of the record. Accordingly, we find the trial court did not err in dismissing Jackson's sixth ground for relief pursuant to the doctrine of res judicata.

{¶62} In his tenth ground for relief, Jackson argues the trial court prevented defense counsel from rendering effective assistance by preventing counsel from questioning Detective Ezzo about his promise to Jackson's brother, Reverend Darnell Knox, that Jackson would not receive the death penalty if he cooperated with the police. Similarly, Jackson argues in his eleventh ground for relief that defense counsel rendered ineffective assistance of counsel by failing to present the testimony of Reverend Knox "to substantiate his claim that law enforcement promised [Jackson] that he would not be subject to the death penalty if he cooperated."

{¶63} In support of his tenth and eleventh grounds for relief, Jackson attached a self-serving affidavit indicating that he would not have cooperated with the police or made incriminating statements had the detectives not promised that he would not receive the death penalty. In addition, Jackson relies on the affidavit of Reverend Knox, who averred that detectives asked him to tell Jackson that he would not receive the death penalty if he turned himself in and cooperated with their investigation.

{¶64} In his twelfth ground for relief, Jackson argues that defense counsel rendered ineffective assistance of counsel by failing to support his motion to suppress his confession with evidence that the investigating detectives denied him the opportunity to

contact his attorney following his arrest. In support of his twelfth ground for relief, Jackson again relies on a self-serving affidavit, stating that he was denied the opportunity to contact his attorney prior to making incriminating statements to Detective Raymond Diaz.

**{¶65}** Because Jacksons tenth, eleventh, and twelfth grounds for relief rely exclusively on conversations that occurred outside the record, the trial court erred by concluding that res judicata barred Jackson from reasserting these specific ineffective assistance of counsel claims. However, a reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason. *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 46.

**{¶66}** After careful review, we find the evidence attached in support of Jackson's tenth, eleventh, and twelfth grounds for relief failed to establish sufficient operative facts to warrant a hearing. As stated by the trial court:

> Grounds for relief X and XI are not supported in defendant's proffered evidence. No evidence supports the conclusion that any member of law enforcement told defendant that he would not be subject to the death penalty if he did or did not do certain things. No new evidence calls into question the correctness of the trial court's handling of defendant's attempt to cross-examine Det. Ezzo on the subject. At trial, defense counsel did not represent that they possessed evidence to the contrary and therefore, the trial court concluded that the trial phase examination of the officer was merely a fishing expedition. The affidavit of defendant's brother, Rev. Knox, does not identify any member of law enforcement who made such a statement. There are no facts upon which this court can now conclude that the performance of trial counsel was deficient in this regard or it in any way prejudiced defendant.

> Ground for relief XII is not supported by evidence. The lengthy transcript of defendant's recorded statement to police after his arrest does

not contain any request by defendant for the opportunity to talk to legal counsel. Defendant's affidavit is insufficient to enable the court to conclude defendant was denied such a request.

**{¶67}** We agree with the trial court's conclusion that the evidence supporting Jackson's ineffective assistance of counsel claims fails to establish that counsel's performance was deficient or that Jackson was prejudiced by the alleged deficient performance. Initially, we note that defense counsel did, in fact, attempt to question Det. Ezzo about any promises he made to Jackson in exchange for his cooperation. However, the trial court prevented counsel from doing so because the available evidence did not support the line of questioning. Thus, Jackson's tenth ground for relief challenges the trial court's evidentiary ruling and not counsel's representation. Nevertheless, given the lack of specificity in Reverend Knox's affidavit, we agree with the trial court's determination that counsel failed to set forth a sufficient basis to impeach Det. Ezzo about purported statements he made during the course of his investigation. *See* Evid.R. 607(B) ("A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact."). In addition, we find defense counsel's decision not to call Reverend Knox as a defense witness fell within the purview of trial strategy.

**{¶68}** Moreover, we find no merit to Jackson's contention that counsel was ineffective for failing to file a motion to suppress incriminating statements Jackson made to Det. Diaz outside the presence of counsel.

> Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. Rather, the failure to file a motion to suppress

constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.

(Citations omitted.) *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28.

**{¶69}** In this case, Det. Diaz conducted a videotaped interview of Jackson on June 22, 2009. After waiving his *Miranda* rights, Jackson admitted shooting Pickryl. But Jackson said that he had been trying to scare her and had not intended to kill her. At trial, the panel admitted the 56-page transcript of Jackson's recorded interview with Det. Diaz. As noted in the trial court's judgment entry, the transcript does not contain any request by Jackson for the opportunity to talk to legal counsel. For these reasons, we find counsel could reasonably have decided that filing a motion to suppress Jackson's statements to Det. Diaz would have been a futile act.

**{¶70}** Accordingly, the trial court did not err in failing to provide a hearing on Jackson's tenth, eleventh, and twelfth grounds for relief.

### ii. Proportionality of Ohio's Death Penalty

**{¶71}** With regard to his eighth ground for relief, Jackson argued that Ohio's death penalty law disproportionately imposes the death penalty upon minorities. Our review of Jackson's direct appeal reveals that the Ohio Supreme Court rejected Jackson's claim that Ohio's death penalty is unconstitutional. *Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 221.

**{¶72}** Even assuming Jackson could bring this claim and it was not prevented by res judicata, "[b]oth the United States Supreme Court and the Supreme Court of Ohio have refused to accept statistics that purport to show a racial disparity in the imposition of the death penalty as grounds for finding the death penalty to be unconstitutional." *State v. Steffen*, 31 Ohio St.3d 111, 124, 509 N.E.2d 383 (1987), *cert. denied*, 485 U.S. 916, 108 S.Ct. 1089, 99 L.Ed.2d 250 (1988). Rather than make a general showing of disparity, a defendant "'must show that racial considerations affected the sentencing process in his case'" for equal protection to be implicated. *Id*. While Jackson has submitted statistical information relating to the application of the death penalty to African Americans in Ohio and Cuyahoga County, he has presented no evidence to demonstrate that the death penalty was applied in a discriminatory manner in his case. *See State v. Frazier,* 6th Dist. Lucas No. L-07-1388, 2008-Ohio-5027, ¶ 67. Accordingly, the trial court did not err in failing to provide a hearing on Jackson's eighth ground for relief.

### iii.   Jury Waiver

**{¶73}** In his ninth ground for relief, Jackson alleged that his jury waiver was not knowingly or intelligently made where he was not advised of "numerous factors," including:

> A) That the concurrence of only three people rather than a jury of twelve would be necessary to convict him of the underlying charges;

> B) That the concurrence of only three people rather than a jury of twelve would be necessary to convict him of the death penalty specifications;

> C) That the concurrence of only three people rather than a jury of twelve would be necessary before he could be sentenced to death;

D) He would be giving up his right to a two-stage sentencing process before a death sentence could be imposed, and replacing it with a one-step process, since a jury can only make a recommendation of death, and the trial judge must then make his own independent determination whether death is the appropriate penalty;

E) That the opportunity for reversal of conviction and/or death sentence on appeal is greatly diminished; and

F) That the jury waiver may be withdrawn at any time before the commencement of trial.

{¶74} Jackson further argued that his waiver was not knowingly made where he was suffering from a headache at the time of the waiver colloquy and where he relied on trial counsel's statement that he would not receive the death penalty if he waived a jury.

{¶75} As acknowledged by the trial court, the Ohio Supreme Court rejected Jackson's contention that his jury waiver was not knowingly, voluntarily, or intelligently made. In doing so, the court performed a detailed and extensive review of the record and the various arguments raised by Jackson concerning the validity of his jury waiver. *Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 106-116. However, in his postconviction petition, Jackson asserts additional jury waiver arguments that could not have been raised or fairly determined on direct appeal without resorting to evidence outside the record. Specifically, Jackson relies exclusively on his own self-serving affidavit, wherein he averred that (1) defense counsel told him that he was "in good" with the trial judge and Jackson would not get the death penalty if he waived his right to a jury, and (2) he would not have waived his right to a jury had defense counsel not told him he would not receive the death penalty if he tried his case before a

three-judge panel. Because the above conversation occurred outside the record, the trial court erred by concluding that res judicata barred Jackson from reasserting his jury waiver claims. However, the trial court, nonetheless, did not err by dismissing the claim.

{¶76} We note initially that as a general matter, "evidence outside the record in the form of petitioner's own self-serving affidavit alleging constitutional deprivation will not compel a hearing." *State v. Holloman*, 10th Dist. Franklin No. 06AP-608, 2006-Ohio-6789, ¶ 9, citing *State v. Kapper*, 5 Ohio St.3d 36, 37-38, 448 N.E.2d 823 (1983). In addition, the record reflects Jackson informed the trial judge in open court that he was waiving his right to a jury trial and signed a written waiver stating that he voluntarily waived his right to a jury and elected to be tried by a three-judge panel. The waiver acknowledged that he understood that he had the right to a "jury of twelve, and that no verdict could be made by a jury except by agreement of all twelve members of that jury." The waiver stated that "no threats or promises have been made to induce me to waive this right, and * * * I am not under the influence of any drugs, alcohol, or medication that would affect my decision." *See Jackson* at ¶ 110. Under these circumstances, we find Jackson's affidavit does not set forth sufficient operative facts to overcome the presumption that his waiver was voluntarily, knowingly, and intelligently made.

{¶77} Based on the foregoing, we find the trial court did not err in dismissing Jackson's sixth, eighth, ninth, tenth, eleventh, and twelfth grounds for relief without a hearing.

### 3. Judicial Bias

**{¶78}** We now address Jackson's allegations of judicial bias. In his thirteenth ground for relief, Jackson argues his right to a fair trial was violated "due to the judicial bias that was displayed from the presiding judge towards trial defense counsel." Specifically, Jackson alleged that the trial court "repeatedly gave curt responses to defense counsel" and "developed a personal animosity towards [defense counsel,] which prejudiced Jackson's right to a fair trial."

**{¶79}** In denying Jackson's petition, the trial court stated, in pertinent part:

> As to ground for relief XIII, the court finds no evidence in the record that defendant was denied a fair trial due to judicial bias by the court during trial and mitigation proceedings and it finds no evidence in the record that the court had any conflict with defense counsel. The court notes, as did the state of Ohio in its brief, that the defendant's proffered support for this claim refers to only six pages in a transcript exceeding 2000 pages. In addition, the court finds the record reveals only a trial court's proper concern for being interrupted while on the record, interruptions being both unproductive and injurious to a clear transcription of the trial proceedings.

**{¶80}** "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, citing *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

> Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

**{¶81}** In support of his judicial bias claim, Jackson cites portions of the trial transcript where the presiding judge advised defense counsel not to interrupt the court while speaking on the record and admonished defense counsel for raising untimely objections. In addition, Jackson submitted affidavits from co-defense counsel averring that "both pretrial negotiations and trial proceedings were marred by an extraordinary contentious relationship between the Judge and [defense counsel]." Co-counsel further averred that he believed the trial judge "developed a personal animosity towards [defense counsel] during the course of pretrial and trial court proceedings."

**{¶82}** Although the trial court denied Jackson's claims of judicial bias on substantive grounds, we find Jackson's allegations set forth in his thirteenth ground for relief are barred by the doctrine of res judicata. In our view, Jackson's current allegations of judicial bias could or should have been raised in his direct appeal. In fact, our review of *Jackson* reveals that the Ohio Supreme Court considered and rejected numerous allegations of judicial bias. *Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, at ¶ 184-187. We find nothing in this record to suggest Jackson was precluded from advancing the current allegations of judicial bias in his direct appeal.

**{¶83}** Moreover, we do not accept Jackson's position that the evidence attached in support of his thirteenth ground for relief constituted new evidence. As stated, Jackson's

position relies exclusively on statements made on the record during the trial proceedings and an affidavit of co-counsel, who represented Jackson throughout the trial. Such evidence was in existence and available at the time Jackson filed his direct appeal. Despite Jackson's reliance on the affidavit of his attorney, such evidence outside the record does not preclude the application of res judicata where, as here, the judicial bias claim could fairly have been determined on direct appeal based on the information contained in the trial record. *State v. Lewis*, 8th Dist. Cuyahoga No. 73736, 1998 Ohio App. LEXIS 5777 (Dec. 3, 1998). *See also State v. Quinones*, 8th Dist. Cuyahoga No. 104016, 2016-Ohio-7225, ¶ 12 ("submitting evidence dehors the record in support of a petition for postconviction relief does not preclude the application of res judicata if the claim could fairly have been determined on direct appeal based on the information contained in the trial record.").

**{¶84}** Accordingly, we find the trial court did not err by dismissing Jackson's thirteenth ground for relief without a hearing.

### 4. Postconviction Provides a Meaningful Review

**{¶85}** In his seventh ground for relief, Jackson argued that Ohio's postconviction proceedings are inadequate and fail to provide meaningful review "because they allow for little opportunity for factual development because postconviction discovery is not permitted and, without sufficient documentation, a defendant is not entitled to an evidentiary hearing."

**{¶86}** This court in *State v. Hutton*, 8th Dist. Cuyahoga No. 76348, 2004-Ohio-3731, ¶25, 26, addressed this identical issue and held:

A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment. *See State v. Crowder*, 60 Ohio St.3d 151, 573 N.E.2d 652 (1991). It bears emphasis that state postconviction review is not a constitutional right. *Id*. Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal. *State v. Duling*, 21 Ohio St.2d 13, 254 N.E.2d 670 (1970); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).

Notwithstanding the narrow focus of the postconviction review under R.C. 2953.21, we believe this remedy provides adequate safeguards to protect the constitutional rights of individuals convicted of a criminal offense.

**{¶87}** Based on the foregoing precedent, the trial court did not abuse its discretion by refusing to conduct a hearing to address the merits of Jackson's seventh ground for relief.

## 5. Cumulative Error

**{¶88}** Finally, Jackson argues the cumulative effects of the foregoing errors and omissions amounted to prejudicial error that deprived him of a fair trial.

**{¶89}** A judgment of conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. By its terms, the doctrine of "cumulative error" will not provide a basis for reversal in the absence of multiple errors. *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000). Because Jackson failed to support his petition with evidence demonstrating multiple constitutional deprivations, the trial court properly denied Jackson's argument regarding cumulative error. *See State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837.

{¶90} Based on the foregoing, we find the trial court did not abuse its discretion in denying Jackson's petition for postconviction relief without a hearing. Accordingly, Jackson's first, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth assignments of error are overruled.

{¶91} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH
SEPARATE OPINION

MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶92} I concur with the well-reasoned decision reached by the majority in this case, except with regard to assignment of error No. 6. In that assigned error, Jackson challenges the trial court's dismissal of his claim that his waiver of a jury trial was not knowingly, voluntarily, and intelligently made. Jackson sets forth several grounds in his argument. However, relevant to this separate opinion is Jackson's argument that his

waiver was not proper because he relied on his trial counsel's assertions that he would avoid the death penalty if he waived a jury trial. The majority properly notes that the trial court erred in concluding that this argument was barred as res judicata, but determines that the trial court was nonetheless correct in dismissing the claim. I disagree with this finding.

{¶93} In reaching the conclusion that the trial court committed no error by dismissing this claim, the majority first references *State v. Holloman*, 10th Dist. Franklin No. 06AP-608, 2006-Ohio-6789, ¶ 9, which cites to *State v. Kapper*, 5 Ohio St.3d 36, 37-38, 448 N.E.2d 823 (1983), for the proposition that, generally, evidence consisting of only a petitioner's self-serving affidavit does not require the trial court to conduct a hearing on the matter. While *Holloman* does state this proposition, it does so in the context of setting forth various reasons why a court may refuse to grant a hearing for a postconviction petition, *see id.* at ¶ 8-10. And *Holloman's* citation to *Kapper* is misplaced because *Kapper* dealt with a postconviction relief petition that set forth claims with no supporting evidence like an affidavit. *See id.* at 38 ("we hold that a petition * * * is subject to dismissal without a hearing when the record * * * indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts."). Such is not the case here.

{¶94} Jackson's affidavit specifically avers that his trial counsel told him that if he waived a jury trial, he would not get the death penalty. This sworn statement is enough to warrant a hearing. There is nothing in the record to rebut Jackson's affidavit,

including his signed waiver. Although the signed waiver was sufficient to demonstrate that Jackson knew and understood the rights he was giving up and that no threats or promises were made to induce him to waive his right to a jury trial, such an acknowledgment does not account for what his trial counsel stated to him about the death penalty if his averments are true.

{¶95} Regarding the credibility of Jackson's averments, the trial court did not find that Jackson's affidavit lacked credibility. When referencing certain grounds for relief including the issue discussed herein, the trial court in its journal entry states, "[t]o the extent these grounds for relief make reference to new evidence introduced with the petition, the court finds the new evidence only marginally significant to, and not supportive of, the claims made."

{¶96} Jackson's guilt for killing Tracy Pickryl was never at issue. The defense resources in this case, as with many capital cases, were devoted to mitigation for the sentencing phase: to avoid the death penalty. With Jackson being sentenced to the ultimate punishment for his crime, the claims he makes in his affidavit regarding his trial counsel's statements warrant a hearing. I therefore dissent from the conclusion that the trial court properly dismissed this ground of Jackson's petition.